******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

*Syllabus*

The plaintiff in the first action, K, sought a dissolution of his marriage to the defendant in that action, J. The trial court rendered judgment dissolving the marriage, and the dissolution judgment incorporated the parties' written agreement, which provided the parties with joint custody of their minor child, T, and that T's primary residence would be with K. In February, 2016, J filed an application for an emergency ex parte order of custody pursuant to statute (§ 46b-56f), seeking temporary custody of T with no visitation between T and K. In her application, J alleged that K had physically abused his fiancée in T's presence, and that K had been arrested as a result of the altercation. In a second action, J filed an application for relief from abuse seeking a restraining order pursuant to statute (§ 46b-15) to protect both herself and T, alleging that K had threatened to kill J if she took T away from K, that K had been arrested as a result of the altercation with his fiancée, and that K had a violent history and criminal record of abuse. The trial court granted the ex parte applications, issued a restraining order, awarded temporary custody of T to J and scheduled further hearings. At a hearing in August, 2016, the court modified custody, ordered the parties to have joint legal custody of T, with T's primary residence with J, permitted K to see T in therapeutic sessions with C, a psychologist with whom T had begun therapy, and ordered that T continue therapy with C until no longer needed and that K could have contact with T as permitted by J. At a hearing in December, 2016, the court, with a waiver by both parties, admitted into evidence an updated mental health report from C regarding T's progress. The court also extended the restraining order only as to J, ordering K to stay 100 yards away from J at all times and not to have any contact with J. The court further ordered that it would rely on C to dictate the scope of K's conduct with T in a therapeutic setting and stated that C would be in charge of contact between K and T. On K's appeal to this court, *held:*

1. K could not prevail on his claim that J had failed to meet her burden of proof with respect to her applications for relief from abuse and for an emergency ex parte order of custody: the trial court properly issued the restraining order to include protection for both J and T, as J presented evidence of K's altercation with his fiancée and his threat to harm J and, thus, there was sufficient evidence before the court to prove that a continuous threat of present physical pain or physical injury to J existed as required by § 46b-15, and it was within the court's discretion to make such order it deemed appropriate for the protection of J, the applicant, and T, her dependent child; moreover, there was sufficient evidence to support the court's determination that an immediate and present risk of physical danger or psychological harm to T existed at the time of J's application for an emergency ex parte order of custody pursuant to § 46b-56f, as the court heard evidence that K had engaged in a physical altercation with his fiancée while T was present, T's teacher expressed concern about T's behavior, C's reports expressed concern about incidents of violence at K's home, and T's babysitter testified that T became scared, upset, and hurt when asked about going to K's home.

2. K failed to establish his claim that the court committed plain error in admitting into evidence T's mental health records, which was based on his claim that certain waivers executed by the parties were invalid due the existence of a conflict; the claimed error of the trial court was neither readily discernible on its face nor obvious in the sense of not debatable, as the parties, as the parents and de facto guardians of T, agreed that the court should review T's mental health reports, noted the importance of protecting T's privacy with respect to the records and agreed it would be beneficial for the court to review them, K did not provide any authority requiring the court to appoint a guardian ad

litem or showing that the parties' agreement to allow the court to use the records was improper, and K's argument that the parties were disqualified from waiving T's privilege because the parties were custody combatants, and that waiver was done to advance each party's own interest instead of for T's benefit was speculative and, therefore, unpersuasive.

3. The court's order regarding K's parenting time and custody of T constituted an impermissible delegation of judicial authority to C; although it was permissible for the court to seek advice and to accept recommendations from a nonjudicial entity, the court, which expressly stated that it would rely on C with respect to issues involving T and noted that C would dictate the scope of K's contact with T in a therapeutic setting, improperly granted decision-making authority to C by removing itself from the process and permitting C to decide the nature and scope of K's contact with T.

Argued December 7, 2017—officially released June 5, 2018

*Procedural History*

Action, in the first case, for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the court, *Dolan, J.*, rendered judgment dissolving the marriage and granting certain other relief; thereafter, the defendant in the first case filed a motion to modify custody and an application for an emergency ex parte order of custody, and an application, in a second case, for relief from abuse; subsequently, the court, *Carbonneau, J.*, granted the application for ex parte order of custody in the first case, and granted the application for relief from abuse in the second case as to the applicant and minor child; thereafter, the matters were consolidated for a hearing before *Carbonneau, J.*; orders extending the order of temporary custody; subsequently, the court, *Carbonneau, J.*, rendered judgments modifying custody in the first case and extending the temporary restraining order only as to the applicant in the second case, from which the plaintiff in the first case and respondent in the second case appealed to this court. *Reversed in part; further proceedings.*

*Allen G. Palmer*, with whom, on the brief, was *Logan A. Carducci*, for the appellant (plaintiff in the first case, respondent in the second case).

*Opinion*

DiPENTIMA, C. J. In this protracted domestic litigation, arising out of a dissolution of marriage action and a separate application for relief from abuse, the plaintiff/respondent, Kyle S., appeals from postjudgment orders of the court rendered in favor of the defendant/applicant, Jayne K.[1] On appeal, Kyle S. claims that (1) Jayne K. failed to meet her burden of proof with respect to her application for relief from abuse filed pursuant to General Statutes § 46b-15, her application for an emergency ex parte order of custody filed pursuant to General Statutes § 46b-56f and her motion for modification of custody filed pursuant to General Statutes § 46b-56, (2) the court committed plain error by accepting the parties' waiver of the minor child's privileged mental health records and admitting the records into evidence and (3) the court improperly delegated its authority to decide Kyle S.'s parenting time and custodial rights to a nonjudicial entity. We agree with Kyle S.'s third claim and, accordingly, reverse in part the judgments of the trial court.

The following facts and procedural history are relevant to our discussion. In 2008, Kyle S. initiated a dissolution proceeding. On May 2, 2008, the parties agreed to the appointment of Katarzyna Maluszewski as guardian ad litem for T, the minor child of the parties, whose date of birth is in May, 2004 . On September 8, 2009, Jayne K. filed an application for relief from abuse against Kyle S., and the court issued an ex parte restraining order. See *Jayne S.* v. *Kyle S.*, 116 Conn. App. 690, 690–91, 978 A.2d 94 (2009). Jayne K. alleged that a previous restraining order had been issued against Kyle S. as a result of a January, 2008 incident when he had kicked Jayne K., breaking her rib. Id., 691. The September, 2008 application sought a restraining order after Jayne K. had claimed, inter alia, that Kyle S. left a voicemail in which he had threatened "to kill" her. Id. Following a hearing, the court, *Hon. Bernard D. Gaffney*, judge trial referee, extended the restraining order for a period of six months, from October 3, 2008, to April 3, 2009. Id., 691–92.

On April 22, 2009, the court, *Dolan, J.*, rendered a judgment dissolving the parties' marriage. It found that the parties had been married in July, 2006, and had one child, T. The court incorporated the parties' written agreement dated April 17, 2009, into the dissolution judgment. The agreement provided that the parties would have joint custody of T, with his primary residence with Kyle S. The agreement also provided that Jayne K. would not pay child support and neither party would pay or receive alimony. In 2011, Maluszewski accepted $3000 as a full and final settlement of her fees as the guardian ad litem for T.[2]

For the period between February, 2013, and Febru-

ary, 2016, the parties filed no motions, and the dissolution/custody file remained static. On February 11, 2016, Jayne K. filed an application for an emergency ex parte order of custody of T, pursuant to General Statutes § 46b-56f.[3] She sought, inter alia, an order of temporary custody of T, with no visitation between T and Kyle S. In the affidavit attached to her motion, she claimed that Kyle S. had physically abused his fiancée in the presence of T. Jayne K. further stated that Kyle S. had been arrested and that the Department of Children and Families (department) had been contacted. She also filed a motion for modification of custody seeking sole custody of T, listing Kyle S.'s arrest as the requisite material change in circumstances.[4]

At this time, Jayne K., in a separate file, also filed an application for relief from abuse against Kyle S., pursuant to General Statutes § 46b-15,[5] seeking a restraining order to protect both herself and T. In her affidavit attached to this application, Jayne K. expressed fear for her safety, stating that Kyle S. had been arrested for attacking his fiancée, had a violent history and criminal record of abuse, stalking and harassment, and had threatened to kill Jayne K. if she took T from him.

That day, the court, *Carbonneau*, *J.*, granted Jayne K.'s ex parte applications and awarded the relief sought without holding a hearing. Specifically, the court issued a restraining order and awarded temporary custody of T to Jayne K. It further ordered the parties to cooperate with the department and to follow any reasonable mandates. Additionally, the court scheduled a hearing on these matters.

Four days of hearings regarding Jayne K.'s applications and motion commenced on July 25, 2016. Jayne K. testified that in February, 2016, T's teacher had emailed her that T had exhibited "goofy behaviors" at school. She also received a call from Kyle S.'s fiancée, informing Jayne K. about the events of Kyle S.'s arrest.[6]

Jayne K. also indicated that T had started treatment with Warren Corson, a psychologist, on June 9, 2016. According to Jayne K., T benefitted greatly from this therapy. She requested sole custody of T. The court continued its temporary order of sole custody in favor of Jayne K.

At the next hearing date, on August 12, 2016, the court ordered that the parties would share joint legal custody of T, with primary residence with Jayne K. The court ordered that Kyle S. could see T in therapeutic sessions with Corson, and ordered other contact as permitted by Jayne K., including access via electronic means. It further ordered that the therapy sessions with Corson were to continue until no longer needed or beneficial. At the September 23, 2016 hearing, following the agreement of the parties, the court admitted into

evidence a mental health report from Corson regarding T.

At the December 9, 2016 hearing, the court noted that the restraining order was scheduled to expire on February 19, 2017.[7] Again with the agreement of the parties, the court admitted into evidence an updated report of T's progress with Corson. Following Kyle S.'s testimony, and closing arguments from the parties, the court orally rendered its decision.

The court found Jayne K.'s testimony credible and that she had sustained her burden of proof under § 46b-15. Accordingly, it continued the existing restraining order, iterating that Kyle S. was "not to assault, threaten, abuse, harass, follow, interfere with or stalk [Jayne K.]." The court ordered Kyle S. to stay away from Jayne K.'s home and work, to not have any contact with her for any reason, and "to stay 100 yards away from her at all times [and] for all reasons."

The court then considered the issue of Kyle S.'s contact with T. The court stated that it would rely on Corson to dictate the scope of Kyle S.'s conduct with T in a therapeutic setting. The court specifically noted: "So . . . I'm not extending any aspect of the temporary restraining order to [T] but, in the other file, the custody file, *I am restricting that contact so that the mental health professional can be in charge.*" (Emphasis added.) This appeal followed. Additional facts will be set forth as necessary.

I

Kyle S. first claims that Jayne K. failed to meet her burden of proof with respect to her application for relief from abuse, her application for an emergency ex parte order of custody and her motion to modify custody. Specifically, Kyle S. argues that neither the application for a restraining order nor the evidence at the hearings were sufficient to establish that he presented an immediate and present risk of physical danger or psychological harm to T, or that a change in custody was warranted. We disagree.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . Likewise, [a] prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion. . . .

"In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a

trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Putman* v. *Kennedy*, 104 Conn. App. 26, 31, 932 A.2d 434 (2007), cert. denied, 285 Conn. 909, 940 A.2d 809 (2008); see also *Jordan M.* v. *Darric M.*, 168 Conn. App. 314, 318, 146 A.3d 1041, cert. denied, 324 Conn. 902, 151 A.3d 1287 (2016).

A

We first address Kyle S.'s argument that there was insufficient evidence to support the granting of Jayne K.'s application for a restraining order pursuant to § 46b-15.[8] "The plain language of § 46b-15 clearly requires a continuous threat of present physical pain or physical injury before a court can grant a domestic violence restraining order." *Krystyna W.* v. *Janusz W.*, 127 Conn. App. 586, 590, 14 A.3d 483 (2011); *Putman* v. *Kennedy*, supra, 104 Conn. App. 32. "[D]omestic violence restraining orders will not issue in the absence of the showing of a threat of violence, specifically a continuous threat of present physical pain or physical injury to the applicant. . . . The legislature promulgated § 46b-15 to provide an expeditious means of relief for abuse victims. . . . It is not a statute to provide a remedy in every custody and visitation dispute, however urgent." (Citations omitted; internal quotation marks omitted.) *Jordan M.* v. *Darric M.*, supra, 168 Conn. App. 319–20.

At the hearing, Jayne K. testified that she had spoken with Kyle S.'s fiancée following the incident resulting in Kyle S.'s arrest. The fiancée told "her side of what happened while [T] was present in [Kyle S.'s] care." Jayne K. also testified that T had been exposed to a "history of violence" and that the department had investigated the charges filed against Kyle S. During cross-examination, Jayne K. testified that Kyle S. had threatened her in February, 2016.[9] Additionally, in the August 9, 2016 mental health report, T's therapist reported that T had been "very concerned about incidents of violence that reportedly occurred at [Kyle S.'s] home . . . ." In its oral decision, the court expressly found Jayne K.'s testimony to be credible.

The court granted the application for a restraining order on the bases of Jayne K.'s credible testimony, all of the evidence, and the incident that had occurred between Kyle S. and his fiancée in February, 2016, that led to this arrest. We previously have recognized that a single incident, coupled with the findings that the subject of the restraining order presently poses a continuous threat, may satisfy the requirement of § 46b-15. *Rosemarie B.-F.* v. *Curtis P.*, 133 Conn. App. 472, 477,

38 A.3d 138 (2012); see also *Putnam* v. *Kennedy*, supra, 104 Conn. App. 34 (requirement for multiple incidents of physical abuse would defy prophylactic purpose of § 46b-15). In the present case, Jayne K. presented evidence of Kyle S.'s altercation with his fiancée and his threat to harm Jayne K. We conclude, therefore, that there was sufficient evidence before the court to prove the existence of a continuous threat of present physical pain or physical injury to Jayne K. Furthermore, it was within the court's discretion to "make such orders as it deems appropriate for the protection of the applicant *and such dependent children . . . as the court sees fit*." (Emphasis added.) General Statutes § 46b-15 (b); see also General Statutes § 46b-15 (e). Accordingly, we cannot conclude that the court improperly issued the restraining order to include protection for both Jayne K. and T.

B

Next, we address Kyle S.'s argument that there was insufficient evidence to support the February 11, 2016 granting of Jayne K.'s application for an emergency ex parte order of custody pursuant to § 46b-56f.[10] Subsection (c) of this statute provides in relevant part: "The court shall order a hearing on any application made pursuant to this section. If, prior to or after such hearing, the court finds that an immediate and present risk of physical danger or psychological harm to the child exists, the court may, in its discretion, issue an emergency order for the protection of the child . . . ." We note that this order was superseded by the August 12, 2016 order. As with an order pursuant to § 46b-15, a § 46b-56f order is not subject to dismissal pursuant to the mootness doctrine. See generally, *Putnam* v. *Kennedy*, 279 Conn. 162, 164–65, 900 A.2d 1256 (2006); *Gail R.* v. *Bubbico*, 114 Conn. App. 43, 47 n.5, 968 A.2d 464 (2009).

We recite again our standard of review. "The proper standard of proof in a trial on an order of temporary custody is the normal civil standard of a fair preponderance of the evidence. . . . We note that [a]ppellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . With those principles in mind, we will review the evidence presented at the hearing . . . to determine whether the court's determination is supported by the evidence in the record." (Internal quotation marks omit-

ted.) *Garvey* v. *Valencis*, 177 Conn. App. 578, 597, 173 A.3d 51 (2017).

As we previously noted, the court heard evidence that Kyle S. engaged in a physical altercation with his fianceé while T was present. Following this incident, the parties exchanged text messages, where Jayne K. indicated that she had spoken with T's teacher. The teacher indicated that T was having a "hard time" and that the teacher was "worried" about him. According to Corson's August 9, 2016 report, T was "very concerned" about the "incidents of violence" at Kyle S.'s home. Courtney Harris, T's babysitter, testified that T became scared, upset and hurt when asked about going to Kyle S.'s home. According to Harris, T's demeanor and behavior improved from February, 2016 through July, 2016, when T was living with Jayne K.

In short, there was evidence to support the court's determination that an immediate and present risk of physical danger or psychological harm to T existed at the time of Jayne K.'s application pursuant to § 46b-56f (c). See *Garvey* v. *Valencis*, supra, 177 Conn. App. 597–99. On the basis of this evidence, we conclude that the evidence was sufficient to support the court's conclusion to sustain the emergency ex parte custody order.

II

Kyle S. next claims that the court committed plain error by admitting T's mental health reports into evidence following the parties' waiver of T's privileged mental health records. Specifically, he contends that the parties' waiver was invalid because each had a conflict "based on his or her own self-interest to advance his or her own case." We conclude that Kyle S. failed to establish plain error in this case.

The following additional facts are necessary for our discussion. At the outset of the August 12, 2016 hearing, Kyle S.'s counsel noted that T had continued his treatment with Corson, that Kyle S. had the opportunity to meet with and speak to Corson, and that it was appropriate for the court to hear Corson's suggestions regarding the familial dynamic. Counsel did note one area of concern: "One of the things, though, that I wanted to make sure of, with no [guardian ad litem] in, is that, you know, from my client's perspective, he wanted to proceed cautiously as far as we don't want this be an absolute and open-ended waiver of the [psychologist]/client privilege that [T] has with Dr. Corson. But we do think that the court's going to want some continuing input from him."

After discussing other matters, the court returned to the issue of T's privileged communications with Corson. "There is no guardian in this case. Ordinarily it is the guardian that holds the privilege for the minor child. Right now, as I understand it, the parents, as the co-

equal guardians of the child, would hold that privilege . . . ." The court clarified that previously there had been joint custody, but presently a temporary order of custody in favor of Jayne K. was in effect. As a prophylactic measure, the court stated: "I will allow [the privileged material be admitted into evidence] only if mother and father waive that privilege on their child's behalf." Kyle S.'s counsel agreed with the court's caution.[11] Additionally, both parties agreed that they shared the goal of protecting T's privacy. They then agreed that a mental health report regarding T, dated August 9, 2016, should be admitted into evidence. Similarly, on September 23, 2016, and December 9, 2016, the court admitted updated reports from Corson into evidence without objection.[12]

General Statutes § 52-146c (b) prohibits a psychologist from disclosing any communications between a person and the psychologist absent a waiver of this privilege. See also *Cabrera* v. *Cabrera*, 23 Conn. App. 330, 335, 580 A.2d 1227, cert. denied, 216 Conn. 828, 582 A.2d 205 (1990); see generally *In re Jacklyn H.*, 162 Conn. App. 811, 824, 826, 131 A.3d 784 (2016). In the present case, the parties, the parents of T,[13] consented to the admission into evidence of the mental health screening reports. Indeed, a review of the transcripts reveals that it was Kyle S., acting through his counsel, who advocated for the admission of these documents. On appeal, however, he changed course and now contends that it was plain error for the court to admit the mental health reports of T after soliciting waivers from the parties.[14]

"It is well established that the plain error doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved [and nonconstitutional in nature], are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment . . . for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . .

"There are two prongs of the plain error doctrine; an appellant cannot prevail under the plain error doctrine unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the

judgment would result in manifest injustice. . . . With respect to the first prong, the claimed error must be patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . With respect to the second prong, an appellant must demonstrate that the failure to grant relief will result in manifest injustice." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted). *State* v. *Outlaw*, 179 Conn. App. 345, 354–55, A.3d , cert. denied, 328 Conn. 910, A.3d (2018); see also *State* v. *McClain*, 324 Conn. 802, 812–13, 155 A.3d 209 (2017).

We conclude that Kyle S. has failed to establish the first prong of the plain error doctrine. See *State* v. *Bialowas*, 178 Conn. App. 179, 190, 174 A.3d 853 (2017) (defendant bore burden of establishing entitlement to relief under plain error doctrine). Specifically, the claimed error of the trial court was neither readily discernible on its face nor obvious in the sense of not debatable. The parties, parents and de facto guardians of T, agreed that the court should review T's mental health reports. Both noted the importance of protecting T's privacy with respect to these records, and agreed it would be beneficial for the court to review Corson's reports. Kyle S. has not provided us with any authority requiring the court in this case to appoint a guardian ad litem, or showing that the parties' agreement to the use of the records by the court was improper.[15] Instead, he merely speculates that, due to their status as "custody combatants," the parties' waiver was done in "his or her own self-interest to advance his or her own case" and thus the parties are disqualified from waiving T's privilege. Additionally, he assumes that T's "treatment records were not offered in his best interests, [as] no [minor] wants it known that he may be in therapy, let alone having his therapist's treatment records in the public domain." Such speculation fails to persuade us that the court committed plain error in accepting the parties' waivers and admitting the exhibits into evidence. See generally *In re Samantha S.*, 120 Conn. App. 755, 759, 994 A.2d 259 (2010) (speculation and conjecture have no place in appellate review), appeal dismissed, 300 Conn. 586, 15 A.3d 1062 (2011). We conclude, therefore, that Kyle S. failed to meet his burden with respect to his claim of plain error.

### III

Finally, Kyle S. claims that the court improperly delegated its authority to decide his parenting time and custody to a nonjudicial entity. Specifically, he contends that it was error for the court to delegate the determination of the scope, nature and duration of his contact with T to Corson. We agree.

The following additional facts are necessary. In the court's December 9, 2016 oral decision, it noted that T had been impacted by the events of the past year. It

then discussed the positive effect of T's therapy with Corson. "Again, I'm delighted at the involvement and the progress that [T] has made with Dr. Corson. That is the path for [T] out of this darkness and that will happen in due course. Dr. Corson has been involved in planning with events unfolding as predictably as possible. One of the events that he has to deal with is the effect of this restraining order."

After explaining the conditions of its restraining order, the court addressed T's contact with Kyle S. "As far as [T] being involved, I'm going to rely on Dr. Corson. *Dr. Corson will dictate the scope of your contact with [T] in a therapeutic setting.* Again, I think he's done a marvelous job as I gleaned from the reports that have been submitted to this court and I want that to continue very sincerely. I want there to be normalcy between you and your son. I want to go carefully and delicately so that [T's] needs and wishes are foremost." (Emphasis added.)

After Kyle S.'s counsel inquired about the scope of the order, the court explained as follows: "What I'm—what I'm intending—I have two files to work with here. The restraining order—the remedies with a restraining order are rather a sledge hammer. I'm trying to be a little more deft and I am simply in the other file entering an order that says that [Kyle S.'s] contact with [T] will be therapeutic in nature as dictated by Dr. Corson. I want the mental health professional to guide me and I want [Kyle S.'s] contact with [T] to be expandable or contractible in conjunction with the child's needs. So you are correct . . . I'm not extending any aspect of the temporary restraining order to [T] but, in the other file, the custody file, *I am restricting that contact so that the mental health professional can be in charge.*" (Emphasis added.) The court further noted that the parties could "clarify" with Corson as needed.

"It is well settled authority that [n]o court in this state can delegate its judicial authority to any person serving the court in a nonjudicial function. The court may seek the advice and heed the recommendation contained in the reports of persons engaged by the court to assist it, but in no event may such a nonjudicial entity bind the judicial authority to enter any order or judgment so advised or recommended. . . . A court improperly delegates its judicial authority to [a nonjudicial entity] when that person is given authority to issue orders that affect the parties or the children. Such orders are part of a judicial function that can be done only by one clothed with judicial authority." (Citation omitted; internal quotation marks omitted.) *Keenan* v. *Casillo*, 149 Conn. App. 642, 660, 89 A.3d 912, cert. denied, 312 Conn. 910, 93 A.3d 594 (2014); see also *Valante* v. *Valante*, 180 Conn. 528, 532–33, 429 A.2d 964 (1980) (rendering of judgment is judicial function and can only be accomplished by one clothed with judicial

authority); *Nashid* v. *Andrawis*, 83 Conn. App. 115, 120, 847 A.2d 1098 (while judicial authority may seek advice and recommendations, in no event may nonjudicial entity bind judicial authority to enter any order or judgment), cert. denied, 270 Conn. 912, 853 A.2d 528 (2004).

In the present case, Kyle S. argues that the court improperly delegated the determination of parenting time and custodial rights to Corson. We agree. The court expressly stated that it would "rely" on Corson with respect to issues involving T It noted that Corson would "dictate" the scope of Kyle S.'s contact with T in a therapeutic setting. After Kyle S.'s counsel sought a further explanation, the court iterated and emphasized Corson's role in determining the contact between T and Kyle S. It further ordered that this contact was subject to expansion or contraction depending on T's needs and that Corson would be "in charge."

The court's orders regarding Kyle S.'s contact with T constituted an impermissible delegation of judicial authority to Corson. Pursuant to the orders of the court, Corson was to "dictate" the scope of the contact between Kyle S. and T, and Corson was authorized to increase or decrease said contact as he saw fit. The court also noted that Corson was "in charge." We recognize that "[a] court is permitted to seek advice, and accept recommendations from [a nonjudicial entity]." *Keenan* v. *Casillo*, supra, 149 Conn. App. 160. Here, the court advanced past that point, and instead granted decision making authority to Corson. *Valante* v. *Valante*, supra, 180 Conn. 532–33; *Weinstein* v. *Weinstein*, 18 Conn. App. 622, 628–29, 561 A.2d 443 (1989). Put another way, the court in the present case improperly removed itself from the decision making process by permitting Corson to decide the nature and scope of Kyle S.'s contact with T. See, e.g., *Zilkha* v. *Zilkha*, 180 Conn. App. 143, 171–72, A.3d (2018) (contrary to parties' claim of improper delegation, court properly considered and fully resolved custody and visitation issues).

The judgment in the dissolution action is reversed only as to the orders providing that a nonjudicial entity determine the contact between Kyle S. and T and the case is remanded for further proceedings solely as to that issue; the judgment in that action is affirmed in all other respects. The judgment in the application for relief from abuse action is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of family violence, we decline to identify the victim or others through whom the victim's identify may be ascertained. See General Statutes § 54-86e.

[1] This appeal comes to us from two distinct yet intertwined files from the Superior Court. In the divorce and custody action, Docket No. FA-08-4016382-S, Kyle S. was the plaintiff and Jayne K. the defendant. In the relief from abuse action, Docket No. FA-16-4038505-S, Jayne K. was the applicant and Kyle S. the respondent. For purposes of clarity and consistency, we refer to the parties by name in this opinion.

We also note that Jayne K. represented herself in the proceedings before

the trial court. On June 30, 2017, we ordered that the appeal would be considered solely on the basis of the record and Kyle S.'s brief and oral argument as a result of Jayne K's failure to file her brief by the established deadline. See, e.g., *Ellen S.* v. *Katlyn F.*, 175 Conn. App. 559, 560 n.1, 167 A.3d 1182 (2017); *Gail R.* v. *Bubbico*, 114 Conn. App. 43, 45 n.1, 968 A.2d 464 (2009).

[2] In the middle of a flurry of postjudgment child related filings, the court reappointed Maluszewski as guardian ad litem on November 10, 2011. The record does not reveal when thereafter Maluszewski ceased acting as T's guardian ad litem. At the July 25, 2016 hearing, the court noted that there was no guardian ad litem in the case.

[3] General Statutes § 46b-56f provides in relevant part: "(a) Any person seeking custody of a minor child pursuant to section 46b-56 or pursuant to an action brought under section 46b-40 may make an application to the Superior Court for an emergency ex parte order of custody when such person believes an immediate and present risk of physical danger or psychological harm to the child exists.

"(b) The application shall be accompanied by an affidavit made under oath which includes a statement (1) of the conditions requiring an emergency ex parte order, (2) that an emergency ex parte order is in the best interests of the child, and (3) of the actions taken by the applicant or any other person to inform the respondent of the request or, if no such actions to inform the respondent were taken, the reasons why the court should consider such application on an ex parte basis absent such actions."

[4] "General Statutes § 46b-56 provides trial courts with the statutory authority to modify an order of custody or visitation. When making that determination, however, a court must satisfy two requirements. First, modification of a custody award must be based upon either a material change [in] circumstances which alters the court's finding of the best interests of the child . . . or a finding that the custody order sought to be modified was not based upon the best interests of the child. . . . Second, the court shall consider the best interests of the child and in doing so may consider several factors. . . . Before a court may modify a custody order, it must find that there has been a material change in circumstances since the prior order of the court, but the ultimate test is the best interests of the child. . . . These requirements are based on the interest in finality of judgments . . . and the family's need for stability. . . . The burden of proving a change to be in the best interest of the child rests on the party seeking the change." (Citations omitted; emphasis omitted; footnotes omitted; internal quotation marks omitted.) *Petrov* v. *Gueorguieva*, 167 Conn. App. 505, 511–12, 146 A.3d 26 (2016).

[5] General Statutes § 46b-15 (a) provides: "Any family or household member, as defined in section 46b-38a, who has been subjected to a continuous threat of present physical pain or physical injury, stalking or a pattern of threatening, including, but not limited to, a pattern of threatening, as described in section 53a-62, by another family or household member may make an application to the Superior Court for relief under this section. The court shall provide any person who applies for relief under this section with the information set forth in section 46b-15b." As former spouses, Kyle S. and Jayne K. fall within the statutory definition of "family or household member." General Statutes § 46b-38a (2) (A); see also *Princess Q. H.* v. *Robert H.*, 150 Conn. App. 105, 113 n.4, 89 A.3d 896 (2014). Additionally, "[t]he court, in its discretion, may make such orders as it deems appropriate for the protection of the applicant and such dependent children or other persons as the court sees fit." General Statutes § 46b-15 (b).

[6] The parties stipulated that the state nolled all of the charges against Kyle S. stemming from this incident on July 13, 2016, involving his fiancée.

[7] After a hearing on March 18, 2016, the court extended the restraining order against Kyle S. to February 19, 2017.

[8] As we have noted, the restraining order expired on February 19, 2017. Despite the expiration of the restraining order, Kyle S.'s appellate claim is not subject to dismissal pursuant to the mootness doctrine. In *Putman* v. *Kennedy*, 279 Conn. 162, 164–65, 900 A.2d 1256 (2006), our Supreme Court concluded that the adverse collateral consequences exception to the mootness doctrine applied to appeals from domestic violence restraining orders. See also *Rosemarie B.-F.* v. *Curtis P.*, 133 Conn. App. 472, 475, 38 A.3d 138 (2012) (same); *Jayne S.* v. *Kyle S.*, supra, 116 Conn. App. 692 (same); *Gail R.* v. *Bubbico*, supra, 114 Conn. App. 47 n.5 (appeal of restraining order issued pursuant to § 46b-15 rescued from mootness by collateral consequences doctrine).

[9] Jayne K. acknowledged, however, that she could not recall the words used by Kyle S., only that he had threatened her.

[10] In passing, Kyle S. notes that Jayne K.'s application for an emergency ex parte order of custody included an "appended motion for modification of custody." Jayne K., however, failed to adequately brief, and thus abandoned any challenge on appeal, to the court's granting of the motion for modification of custody.

[11] Specifically, Kyle S.'s counsel stated: "That makes sense, your Honor. . . . I think in fairness to both parties, it probably would be a good idea that if this came in, that they would—they would end up waiving the privilege."

[12] The report from the September 23, 2016 proceeding is not listed on the exhibit list and is not included in the exhibits provided to this court.

[13] We note that General Statutes § 45a-606 provides in relevant part: "The father and mother of every minor child are joint guardians of the person of the minor, and the powers, rights and duties of the father and the mother in regard to the minor shall be equal." See also *In re Tayquon H.*, 76 Conn. App. 693, 698, 821 A.2d 796 (2003) (mother and father of minor child are de facto guardians of that child).

[14] It would appear that Kyle S., at least in part, induced the claimed error of the trial court by his actions regarding the admission of the mental health reports. The appellate courts of this state have recognized the uncertainty in our law regarding whether claims of induced error may be considered under the plain error doctrine. See *State* v. *Darryl W.*, 303 Conn. 353, 371 n.17, 33 A.3d 239 (2012); *Healey* v. *Haymond Law Firm, P.C.*, 174 Conn. App. 230, 243–44, 166 A.3d 10 (2017); *State* v. *Rios*, 171 Conn. App. 1, 47–48, 156 A.3d 18, cert. denied, 325 Conn. 914, 159 A.3d 232 (2017). Generally, even in instances of induced error, courts have considered claims of plain error.

[15] However, on remand, we believe the court should seriously consider appointing counsel for the minor child, T, in order for T, through counsel, to have the opportunity to argue whether his privacy rights in these records should be protected.