******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# DANIELLE LEHANE *v.* JAMES MURRAY
## (AC 44541)

Bright, C. J., and Cradle and Seeley, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court, challenging certain postjudgment orders of the trial court. Under the parties' separation agreement, which had been incorporated into the dissolution judgment, the parties shared joint legal custody of their minor child, who resided primarily with the plaintiff, and exercised a two week, rotating parenting plan. The separation agreement also provided the plaintiff with a nonmodifiable right to claim the child as a dependent for income tax purposes. Within months of the marital dissolution, the parties embarked on three years of extensive litigation pertaining to custody of and visitation with the child, during which each party filed motions seeking sole custody of the child. After a fifteen day hearing, the trial court found, inter alia, that the plaintiff had a defiant and manipulative disposition, and had misrepresented facts and violated and made up court orders to support her long-standing desire to undermine the defendant's relationship with the child. The court further found that, although the defendant willingly encouraged the mother-child relationship, the plaintiff wilfully denied the defendant access to the child and repeatedly made insulting references about the defendant, which the child understood, as well as unsubstantiated complaints to the police and to the Department of Children and Families. The court denied the plaintiff's motion and granted the defendant's motion, awarding him, inter alia, sole physical custody of the child. The court's order also set a visitation schedule for the plaintiff, and permitted the defendant to alter, change or modify that schedule and the location, dates and times the parties would exchange the child. The court further ordered the plaintiff to undergo a psychological evaluation and to provide a copy of the evaluation to the defendant. *Held*:

1. The trial court properly exercised its decision-making authority, pursuant to statute (§ 46b-56), in affording the defendant a limited amount of discretion to adjust the plaintiff's visitation schedule with the minor child: the court carefully considered the evidence, the unique circumstances at issue, and the extensive, undisputed findings regarding the history of conflict between the parties in the parenting of the child, and made the requisite findings regarding the child's best interest in implementing a practical mechanism for the parties, short of returning to court, to deal with the conflicts in the parenting of their child that have resulted from the plaintiff's obstructionist conduct and consistent tendency to instigate that conflict; moreover, contrary to the plaintiff's contention that the court gave the defendant unbridled authority to suspend or terminate her parenting access to the child and unilateral authority to decide the nature and scope of their relationship, the court established a specific schedule of parenting access, which governed the defendant's exercise of discretion and permitted him to modify her visitation schedule but not to reduce, suspend or terminate her access to the child.

2. The trial court abused its discretion in ordering the plaintiff to undergo a psychological evaluation; the court's authority to order such an evaluation is restricted by statute (§ 46b-6) to pending matters to assist the court in the disposition of the issues presented therein and, because there were no further matters pending before the court, there was no statutorily valid reason to order a psychological evaluation.

3. The trial court erred in modifying the dissolution judgment to permit the defendant to claim the child as a dependent for income tax purposes; the separation agreement included a clear and unambiguous provision giving the plaintiff the nonmodifiable right to claim the child as a dependent.

Argued May 10—officially released September 20, 2022

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Litchfield, where the court, *Danaher, J.*, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Diana, J.*, denied the plaintiff's motion to modify custody and visitation and granted the defendant's motion to modify custody and visitation, and the plaintiff appealed to this court. *Reversed in part*; *further proceedings*.

*Dana M. Hrelic*, with whom were *Johanna S. Katz* and, on the brief, *Stacie L. Provencher*, for the appellant (plaintiff).

*Mary Piscatelli Brigham*, for the appellee (defendant).

*Opinion*

CRADLE, J. In this postdissolution matter, the plaintiff, Danielle Lehane, appeals from the judgment of the trial court modifying the parties' custody of and visitation with their minor child. The court awarded sole legal and physical custody to the defendant, James Murray, and awarded the plaintiff certain visitation rights. On appeal, the plaintiff claims that the court (1) improperly delegated its judicial authority to a nonjudicial party by giving the defendant the authority to "alter, change or modify" her visitation schedule, (2) exceeded its authority by ordering her to submit to a psychological evaluation and to provide the results to the defendant, and (3) improperly awarded the defendant the right to claim the child as a dependent for income tax purposes where the dissolution judgment included a clear and unambiguous provision awarding the plaintiff the nonmodifiable right to do so. We disagree with the plaintiff's claim that the court improperly delegated its judicial authority to the defendant, but we agree with her other two claims. Accordingly, we affirm in part and reverse in part the judgment of the trial court.

The following procedural history is relevant to this appeal. The marriage of the parties was dissolved on March 23, 2017, and their separation agreement was incorporated into the judgment of dissolution. Pursuant to that judgment, the parties shared joint legal custody of their four year old son, who resided primarily with the plaintiff, and the parties exercised a two week rotating parenting plan. Since June, 2017, the parties have been engaged in extensive litigation involving custody of and visitation with their son. Commencing November 24, 2020, and concluding December 21, 2020, the trial court, *Diana, J.*, held a fifteen day hearing on twenty-four postjudgment motions the parties had filed, including motions in which they each sought sole custody of their son. On February 3, 2021, the court issued a memorandum of decision in which, inter alia, it granted the defendant's motion to modify and awarded him sole legal and physical custody of the parties' son.[1] The court further ordered, inter alia, that "the plaintiff shall have parental access to the minor child" every other weekend and every Wednesday overnight, and that "the defendant may alter, change or modify [that] schedule, along with the location, date and time of the exchanges." The court also ordered: "No holiday or vacation orders shall be entered on behalf of the plaintiff unless consented to by the defendant in writing, except that the plaintiff shall have eight (8) hours of access to the minor child over the Thanksgiving weekend and over the Christmas holiday as is decided by the defendant."

The court ordered the plaintiff to immediately undergo a psychological evaluation and to provide a copy of that evaluation to the defendant. The court ordered that the plaintiff "shall follow all recommenda-

tions regarding any and all treatment consultations set forth by the evaluator and therapist."

The court also modified child support, ordering the plaintiff to pay child support in the amount of $122 per week to the defendant in accordance with the Child Support and Arrearage Guidelines set forth in § 46b-215a-1 et seq. of the Regulations of Connecticut State Agencies. The court further ordered that the defendant shall be entitled to claim the child as a dependent for income tax purposes. This appeal followed.

## I

The plaintiff first claims that the trial court improperly delegated its judicial authority to a nonjudicial party by giving the defendant the authority to "alter, change or modify" her visitation schedule. We are not persuaded.[2]

The court's authority to enter orders pertaining to the care and custody of minor children, and the factors that must be considered in doing so, are prescribed by statute. General Statutes (Rev. to 2019) § 46b-56 (a) authorizes the Superior Court in any action involving the custody or care of minor children to "make or modify any proper order regarding the custody, care, education, visitation and support of the children . . . according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable." Subsection (b) of General Statutes (Rev. to 2019) § 46b-56 provides in relevant part: "In making or modifying any order as provided in subsection (a) of this section, the rights and responsibilities of both parents shall be considered and the court shall enter orders accordingly that serve the best interests of the child and provide the child with the active and consistent involvement of both parents commensurate with their abilities and interests. . . ." Subsection (b) of General Statutes (Rev. to 2019) § 46b-56 also contains a nonexhaustive list of possible orders including a catchall provision permitting "any other custody arrangements as the court may determine to be in the best interests of the child." General Statutes (Rev. to 2019) § 46b-56 (c) provides in relevant part that, "[i]n making or modifying any order as provided in subsections (a) and (b) of this section, the court shall consider the best interests of the child, and in doing so may consider, but shall not be limited to, one or more of [sixteen enumerated][3] factors . . . . The court is not required to assign any weight to any of the factors that it considers, but shall articulate the basis for its decision." (Footnote added.)

Although we typically review a trial court's custody and visitation orders for an abuse of discretion, the question of "whether the court improperly delegated its judicial authority presents a legal question over which we exercise plenary review." *Zilkha* v. *Zilkha*,

180 Conn. App. 143, 170, 183 A.3d 64, cert. denied, 328 Conn. 937, 183 A.3d 1175 (2018). "It is well settled . . . that [n]o court in this state can delegate its judicial authority to any person serving the court in a nonjudicial function. The court may seek the advice and heed the recommendation contained in the reports of persons engaged by the court to assist it, but in no event may such a nonjudicial entity bind the judicial authority to enter any order or judgment so advised or recommended. . . . A court improperly delegates its judicial authority to [a nonjudicial entity] when that person is given authority to issue orders that affect the parties or the children. Such orders are part of a judicial function that can be done only by one clothed with judicial authority." (Internal quotation marks omitted.) *Thunelius* v. *Posacki*, 193 Conn. App. 666, 674, 220 A.3d 194 (2019).

In this case, following a fifteen day evidentiary hearing during which the parties introduced more than 100 exhibits, the trial court set forth extensive factual findings and conclusions, which are supported by the record and have not been challenged on appeal, upon which it based its orders pertaining to the parenting of the parties' son. The court began by examining various conflicts that had arisen between the parties since the date of dissolution. The court recounted that the conflict included, but was not limited to, two claims by the plaintiff to the Department of Children and Families (DCF), alleging safety concerns and lack of supervision of the child when he is in the defendant's care, and a similar complaint to the Torrington Police Department (police department). Both DCF and the police department found the plaintiff's claims to be unsubstantiated. Despite knowing that no safety concerns were found, the plaintiff wilfully denied the defendant access to the child for three weeks during the period surrounding those unsubstantiated allegations.

On the basis of the significant and consistent conflicts between the parties, the court found: "The plaintiff's behavior consistently ignores and distorts court orders. She has undermined the defendant's relationship with their son by coaching him, not honoring or encouraging access, and by crying when he visits with his father. . . . [T]he plaintiff describe[s] her[self] . . . [as] the gatekeeper in deciding if the [defendant's] visits [with their son] take place. . . . She admitted that she refused to allow the defendant access to their son for a period of time due to safety concerns, despite a finding by DCF to the contrary. The other reason provided [by the plaintiff] is that the minor child refused to go with the defendant." On the basis of the plaintiff's actions, including but not limited to those recited previously, the court concluded that "the plaintiff failed to act in good faith in encouraging the minor child to visit [the defendant] . . . . Her comments and repeated insulting references to the defendant send a clear mes-

sage that this perceptive child understands, [and] has mirrored and parroted." (Citation omitted.)

In support of its findings, the court referred to communications between the parties on Our Family Wizard (OFW)[4] for the three years since the date of dissolution, which were introduced as exhibits at the hearing. The court found: "A review of the OFW exchanges between the parties clearly reveals, in the parties' own words, how they interact with each other. The defendant is neutral, calm, pleasant, informative and appropriate in his language and tone. The plaintiff is at times appropriate; other times she does not reply to specific questions and often takes on a hostile, combative, accusatory and insulting attitude in her exchange." The court further noted that, while the defendant had demonstrated "his willingness and ability to encourage the mother-child relationship," the plaintiff had "shown no such capacity, willingness or ability to understand and meet the needs of the minor child."

The court further found: "The parties' fun loving child, who wants to please everyone, has struggled since the divorce, as he finds himself stuck in the middle of this high conflict matter. . . . The plaintiff's unsubstantiated incident[s] [were] weaponized to manipulate and influence the minor child to achieve absolute control and restrict the defendant's legal role and personal relationship with their son . . . . As a result of the plaintiff's intentional interference and coaching, the minor child has struggled with the truth. . . . The situation demands a reset to correct and heal the distress and confusion that has been escalating for over three years." (Citations omitted.)

The court additionally noted "the progressively deteriorating relationship between the parties" and concluded: "These parties are incapable of and have been unable to present a unified approach in raising their son, in disciplining him and helping him overcome challenges. The plaintiff has undermined the defendant at every opportunity and has no concern about how her conduct impacts the minor child and his relationship with the defendant. And to continue with the custody order of the separation agreement would manifestly work to the detriment of the minor child."

On the basis of the foregoing, the court concluded: "The evidence in this case is abundantly overwhelming and uncontroverted, as the parties have preserved a written and audiovisual record. The court finds the defendant to be credible and the plaintiff without any credibility. The plaintiff's disposition is defiant, manipulative and misguided; she is unwilling to accept and support DCF's findings and the minor child's having a relationship with [the] defendant. She brazenly misrepresents facts, [and] violates and makes up court orders at will to support her long-standing desire to undermine the defendant's relationship with their son. She is found

to be emotionally uninsightful regarding the defendant and the minor child's relationship. She actively coaches the minor child by telling him what to say and, therefore, she is incapable of meeting his needs. As such, the court finds that there has been a material change in circumstances since the date of judgment regarding custody between the parties' minor child and the plaintiff. The court further finds that it is in the best interest of the minor child to modify the plaintiff's access/visitation schedule."

The court further reasoned: "The plaintiff has made systematic and continuous efforts to interfere with the minor child's natural love and affection for the defendant . . . [and] [s]aid efforts have created a harmful mental health situation for the minor child . . . . The plaintiff has engaged in behavior which had, as a foreseeable consequence, a negative influence on the relationship between the minor child and the defendant . . . . The best interests of the minor child would be served by the plaintiff's being evaluated by a psychiatrist or clinical psychologist for the purpose of developing a therapy plan designed to minimize or eliminate such negative behavior . . . . The best interests of the minor child support a modification of the current custodial orders in an effort to minimize the plaintiff's ability to negatively influence the minor child . . . . The best interests of the minor child support continued work with the mental health professional to assist in adjusting to the custodial changes and assist in dealing with the negative information which has influenced him in the past."

On the basis of the foregoing, the court awarded sole legal and physical custody of the parties' son to the defendant and established a specific schedule of parenting access for the plaintiff. We disagree with the plaintiff's contention that the court improperly delegated its judicial authority when it ordered that the defendant may "alter, change or modify" her visitation schedule. In so ordering, the court did not, as the plaintiff contends, give the defendant "unbridled" authority to modify her right to visit their son; nor did the court give the defendant unilateral authority to suspend or terminate her parenting access to their son. The court's order permits the defendant to modify the plaintiff's visitation *schedule*, not to modify her *right* to visitation. The court established specific parameters regarding the plaintiff's visitation with the parties' son, and the defendant is governed by those parameters in exercising the limited discretion afforded to him by the court. In other words, although the court's order allows the defendant to "alter, change or modify" the plaintiff's visitation *schedule*, it does not permit him to reduce, suspend or terminate her access to their son.[5]

In support of her claim, the plaintiff argues that the court's order allows the defendant to unilaterally

"decide the nature and scope" of the plaintiff's contact with their son, which was held by this court, in *Kyle S.* v. *Jayne K.*, 182 Conn. App. 353, 373, 190 A.3d 68 (2018), to be an improper delegation of judicial authority. We disagree. In *Kyle S.*, the trial court expressly stated that it would "rely" on the minor child's therapist, with respect to issues involving the child, to "dictate" the scope of the father's contact with the child in a therapeutic setting. Id., 361. The court further ordered that the father's contact with the child was subject to expansion or contraction depending on the child's needs and that the therapist would be "in charge." (Emphasis omitted.) Id. This court held that the trial court impermissibly delegated its judicial authority to the minor child's therapist because it "improperly removed itself from the decision-making process by permitting [the therapist] to decide the nature and scope of [the father's] contact with [the child]." Id., 373. This case is distinguishable from *Kyle S.* because, here, the court's order allowing the defendant to "alter, modify or change" the plaintiff's visitation schedule does not give him the authority to "decide the nature and scope" of her relationship with their son.[6] Rather, after fully and carefully considering the evidence presented by the parties, as well as making the requisite findings regarding the best interest of the minor child, the court exercised its judicial decision-making authority in determining the nature and scope of the plaintiff's parenting access and affording the defendant only a limited amount of discretion to modify the visitation schedule.[7]

Our Supreme Court has recognized that "conflicts frequently develop over relatively minor decisions relating to the day-to-day upbringing and support of minor children, conflicts which in reality reflect little more than a difference of opinion or preference between sometimes hostile parties. . . . Frequent litigation of these minor disagreements leads to frustrating court delays . . . and, because of the adversarial nature of traditional court proceedings, can work to heighten tensions and engender further conflict." (Citations omitted.) *Masters* v. *Masters*, 201 Conn. 50, 66, 513 A.2d 104 (1986). Here, it was the court's judicial determination that it was in the best interest of the parties' son that the defendant have sole legal and physical custody, as well as the limited discretion to deal with minor day-to-day conflicts that may necessitate an alteration of the plaintiff's visitation schedule but do not necessarily require court involvement. In other words, by affording the defendant the discretion to adjust the plaintiff's visitation schedule, the court implemented a mechanism for the parties, short of returning to court, to deal with the everyday conflicts that arise in high conflict cases and, in fact, have arisen in this case as a result of the plaintiff's obstructionist conduct.[8] Under the unique circumstances presented in this case, specifically, by way of the court's extensive, undisputed findings

regarding the history of conflict between the parties in the parenting of their son and the plaintiff's consistent tendency to instigate that conflict, the court's order affords the defendant, as the sole legal and physical custodian, a practical mechanism to react, in real time, to the potentially disruptive conduct of the plaintiff and the needs of the parties' son.

The trial court's orders in the present case, similar to the trial court's order vesting certain authority in the minor child's guardian ad litem in *Thunelius*, "[reflect] . . . the court's confidence in the commitment . . . of the [defendant], and the court's desire to minimize the effect of the parties' toxic parenting relationship on their child and to discourage [the plaintiff] from heedless and incessant litigation over matters that should not require judicial intervention." *Thunelius* v. *Posacki*, supra, 193 Conn. App. 676. We conclude that the court properly exercised its decision-making authority in issuing those orders.

## II

The plaintiff next claims that the court exceeded its authority by ordering her to submit to a psychological evaluation. We agree.[9]

General Statutes § 46b-6 provides in relevant part: "In any *pending* family relations matter the court or any judge may cause an investigation to be made with respect to any circumstance of the matter which may be helpful or material or relevant to a proper disposition of the case. . . ." (Emphasis added.) General Statutes § 46b-3 provides that the court in any family relations matter may employ the use of a psychologist, psychiatrist or family counselor in carrying out such an evaluation.

Thus, this court has held that "the [trial] court may require the parties and the child to undergo a psychiatric or psychological evaluation for the purpose of properly disposing of a family matter, in a modification of custody case, [or] to assist in determining the best interest of the child." *Foster* v. *Foster*, 84 Conn. App. 311, 323, 853 A.2d 588 (2004). In accordance with the plain language of § 46b-6, however, it is well settled that the court's authority to order such an evaluation is restricted to *pending* matters to assist in the disposition of the issues presented therein. See, e.g., *Janik* v. *Janik*, 61 Conn. App. 175, 180, 763 A.2d 65 (2000), cert. denied, 255 Conn. 940, 768 A.2d 949 (2001); *Savage* v. *Savage*, 25 Conn. App. 693, 700–701, 596 A.2d 23 (1991); cf. *Martowska* v. *White*, 149 Conn. App. 314, 323, 87 A.3d 1201 (2014) (court properly ordered psychological evaluation for purposes of determining visitation schedule).

In this case, the court did not order the plaintiff to undergo a psychological evaluation to determine whether a modification of custody was appropriate or to aid in the disposition of the case. Rather, the court

ordered the psychological evaluation after it made the determination to modify custody and established the plaintiff's visitation schedule. Because there were no further matters pending before the court, there was no statutorily valid reason for the court to order a psychological evaluation. We therefore conclude that the court abused its discretion in doing so.[10] See, e.g., *Janik* v. *Janik*, supra, 61 Conn. App. 180 (postjudgment order for psychological evaluation constitutes an abuse of discretion).

### III

The plaintiff finally claims that the court improperly modified the dissolution judgment to permit the defendant to claim the child as a dependent for income tax purposes where, pursuant to the parties' separation agreement, the dissolution judgment included a clear and unambiguous provision giving the plaintiff the nonmodifiable right to do so. We agree.

"The [separation] agreement of the parties executed at the time of the dissolution was incorporated into the judgment and is a contract of the parties. . . . The construction of a contract to ascertain the intent of the parties presents a question of law when the contract or agreement is unambiguous within the four corners of the instrument. . . . [T]he construction of a written contract is a question of law for the court. . . . The scope of review in such cases is plenary." (Citations omitted; internal quotation marks omitted.) *Amodio* v. *Amodio*, 56 Conn. App. 459, 470, 743 A.2d 1135, cert. granted, 253 Conn. 910, 754 A.2d 160 (2000) (appeal withdrawn September 27, 2000).

"Once the provisions of a separation agreement . . . are incorporated into the dissolution judgment, they can be modified by court order only if the agreement so incorporated does not preclude modification." (Internal quotation marks omitted.) Id. "When a provision in a divorce decree that precludes or restricts a later court's power to modify financial orders is clear and unambiguous . . . that provision will be upheld." (Internal quotation marks omitted.) Id., 471.

Here, paragraph 7 (e) of the parties' separation agreement provides in relevant part: "The parties agree that for purposes of [Internal Revenue Code] § 152 (e), the [plaintiff] shall be entitled to the dependency exemptions for the minor child for as long as the child is eligible to be claimed as an exemption. . . . The [defendant] shall not claim the child on his own federal tax return in any such year. This right to claim [the minor child] as a dependent for tax purposes is nonmodifiable."

Because the separation agreement clearly and unambiguously restricted modification of the child tax exemption, the court erred in modifying that provision and transferring that right to the defendant.[11]

The judgment is reversed only as to the court's orders that the plaintiff undergo a psychological evaluation and that the defendant may claim the minor child as a dependent for income tax purposes and the case is remanded with direction to vacate those orders; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The court denied the plaintiff's motion for sole custody of the minor child. The court also denied five motions for contempt the plaintiff had filed in which she "argue[d] that the defendant [had] violated terms of their separation agreement alleging incidents of sexual abuse . . . deliberate obstruction to the child's mental health treatment . . . pestering participants during video calls . . . and not following the rotation of the parties in taking the minor child to therapy . . . ." (Citations omitted.)

The defendant also filed several motions for contempt. The court found the plaintiff in contempt for her "systematic and continuous efforts to interfere with the minor child's natural love and affection for the defendant"; her wilful violation of the defendant's right to visitation with the child on Halloween; her wilful denial of the child's access to his paternal grandmother and failure to "encourage affection and to show mutual respect"; and her wilful conduct by which she "coaches the minor child into fits of emotional instability, which deprives the defendant of exercising his parenting time." None of these rulings has been challenged on appeal.

[2] The plaintiff also contends that the court's order regarding vacation time with the parties' son also constitutes an improper delegation of the court's authority because it restricts any future court involvement with that schedule without the consent of the defendant. We decline to so interpret the court's order. Rather than presuming that the court impermissibly sought to restrain any future court from exercising its statutory authority, we construe the court's order requiring the consent of the defendant to pertain to the plaintiff, not the authority of the court.

[3] Specifically, the court may consider: "(1) The temperament and developmental needs of the child; (2) the capacity and the disposition of the parents to understand and meet the needs of the child; (3) any relevant and material information obtained from the child, including the informed preferences of the child; (4) the wishes of the child's parents as to custody; (5) the past and current interaction and relationship of the child with each parent, the child's siblings and any other person who may significantly affect the best interests of the child; (6) the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (7) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (8) the ability of each parent to be actively involved in the life of the child; (9) the child's adjustment to his or her home, school and community environments; (10) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity in such environment, provided the court may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the household; (11) the stability of the child's existing or proposed residences, or both; (12) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (13) the child's cultural background; (14) the effect on the child of the actions of an abuser, if any domestic violence has occurred between the parents or between a parent and another individual or the child; (15) whether the child or a sibling of the child has been abused or neglected, as defined respectively in section 46b-120; and (16) whether the party satisfactorily completed participation in a parenting education program established pursuant to section 46b-69b." General Statutes (Rev. to 2019) § 46b-56 (c).

[4] Our Family Wizard is a website offering web and mobile solutions for divorced or separated parents to communicate, reduce conflict, and reach resolutions on everyday coparenting matters, available at https://www.ourfamilywizard.com/about (last visited September 12, 2022). See *Dufresne* v. *Dufresne*, 191 Conn. App. 532, 535 n.5, 215 A.3d 1259 (2019).

[5] The plaintiff lists many ways by which the defendant could terminate or suspend her access to their son under the guise of his authority to "alter,

change or modify" the visitation schedule, but those extreme hypothetical steps, if taken by the defendant, would run afoul of the court's orders regarding the plaintiff's rights to "parenting access." On the basis of the defendant's history of acknowledging the importance of the son's relationship with both parents, the court trusted that he would continue to act in the son's best interest. If he fails to do so, the plaintiff has the right to file a motion for contempt. Counsel for the defendant acknowledged at oral argument before this court that the limited discretion afforded to the defendant by the trial court does not permit him to suspend or terminate the plaintiff's access to their son.

[6] This case is also distinguishable from other cases in which this court or our Supreme Court has reversed a family court's order on the ground that the court had improperly delegated its core decision-making function to another party, such as, for instance, *Nashid* v. *Andrawis*, 83 Conn. App. 115, 120–22, 847 A.2d 1098, cert. denied, 270 Conn. 912, 853 A.2d 528 (2004), in which the court removed itself entirely from the decision-making process by permitting legal issues to be resolved through binding arbitration that was subject to limited judicial review, or *Valante* v. *Valante*, 180 Conn. 528, 532–33, 429 A.2d 964 (1980), in which the court delegated its authority to render a binding decision to a family relations officer.

[7] We also note that, in this case, the court did not give decision-making authority to a third-party therapist or a mediator but, rather, afforded the father of the child, as the sole legal and physical custodian, the latitude to adjust the mother's visitation schedule in accordance with the child's needs. The court's order is consistent with the well established principle that the care of children resides first with their parents in order to fulfill a function the state can neither supply nor impede. See *Prince* v. *Massachusetts*, 321 U.S. 158, 166, 64 S. Ct. 438, 88 L. Ed. 645 (1944). Indeed, "the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." *Troxel* v. *Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000); see also *Roth* v. *Weston*, 259 Conn. 202, 216, 789 A.2d 431 (2002) (same). In affording the defendant the limited discretion to adjust the plaintiff's visitation schedule, the court recognized the need for the parties to prioritize their roles as mother and father, rather than plaintiff and defendant.

[8] For instance, the trial court found that the plaintiff has demonstrated a pattern of emotionally manipulating the child against the defendant, particularly when the child leaves her to visit the defendant. Recognizing that this is not in the best interest of the child, the court's order allows the defendant to respond to such behavior immediately to alleviate the turmoil suffered by the child.

[9] In light of our resolution of this claim, we need not address the plaintiff's related claims that the court improperly ordered her to provide the defendant with a copy of the psychological evaluation or that the court improperly delegated its authority to the therapist in ordering the plaintiff to adhere to all of the therapist's recommendations.

[10] The plaintiff argues that the reversal of this order requires reversal of the court's "entire custodial decision" because "[t]he orders regarding the psychological evaluation are . . . inextricably tied to the order giving the defendant the unbridled authority to modify the plaintiff's access to the child . . . ." Because we agree that the order requiring the plaintiff to undergo a psychological evaluation was improper in that it is untethered to any pending proceeding, we reject the plaintiff's argument that the order is inextricably tied to the court's other orders.

[11] We further note that an order affording a party the right to claim a child as a tax exemption is not a form of child support but, rather, constitutes a division of property, which may not be modified after the marriage is dissolved. See General Statutes § 46b-81.