******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

*Syllabus*

The plaintiffs, legal guardians of the minor child C, appealed from the orders
of the trial court requiring C to suspend contact with his long-term
personal counselor, L, and engage with a new therapist with the goal
of working toward the resumption of visitation with the defendants, C's
maternal grandparents. Thereafter, the defendants filed a motion with
the trial court, seeking an order that, notwithstanding the plaintiffs'
appeal, there was no automatic appellate stay in effect. Subsequently,
the trial court issued an order that there was no automatic stay of the
custody and visitation orders and that the plaintiffs were to comply
with the trial court's orders. Thereafter, the trial court denied the plain-
tiffs' motion for a discretionary stay. Subsequently, the plaintiffs filed
motions for review of the trial court's orders determining that there
was no automatic appellate stay and denying their motion for a discre-
tionary stay. *Held*:

1. This court granted the plaintiffs' motion for review of the trial court's
order determining that there was no automatic appellate stay in effect
but concluded that the plaintiffs could not prevail on their claim that
the trial court incorrectly determined that there was no automatic appel-
late stay; the trial court's orders pertained to the manner and extent of
visitation, as well as contact with the defendants, and visitation orders
expressly were exempt from the automatic appellate stay under the
relevant rule of practice (§ 61-11 (c)).

2. This court granted the plaintiffs' motion for review of the trial court's
order denying their motion for a discretionary stay and concluded that
the trial court did not abuse its broad discretion only insofar as the
court ordered the parties to engage with a new therapist for the purpose
of facilitating visitation, but it concluded that the trial court did abuse
its discretion in suspending contact between C and L, as that court did
not have before it any evidence regarding the impact of the suspension
of therapy on C's best interest, L was not engaged at the behest of the
trial court, the suspension of therapy was only a suggestion made by
the defendants' counsel at closing arguments, the guardian ad litem
indicated that suspension of therapy with L would not be in C's best
interest and, therefore, the court did not adequately account for the
potential harm to C that could follow from the disruption of his relation-
ship with L; accordingly, relief was granted in part, in that the court's
order that the therapy sessions between C and L were suspended until
further order of the court was stayed pending the final resolution of
this appeal, and the remainder of the relief requested was denied.

Considered May 11—officially released September 6, 2022

*Procedural History*

Action seeking to modify the terms of a visitation
agreement, brought to the Superior Court in the judicial
district of Waterbury, Juvenile Matters, where the court,
*Coleman, J.*, granted the plaintiffs' motion to modify
custody and issued certain orders; thereafter, following
an evidentiary hearing, the court, *Hon. Eric D. Cole-
man*, judge trial referee, reversed its previous orders
and issued new orders, from which the plaintiffs
appealed to this court; subsequently, the court, *Hon.
Eric D. Coleman*, judge trial referee, granted the defen-
dants' motion for order for a determination as to
whether an automatic stay was in effect; thereafter, the
court, *Hon. Eric D. Coleman*, judge trial referee, denied

the plaintiffs' motion for a mistrial, and the plaintiffs filed an amended appeal; subsequently, the court, *Hon. Eric D. Coleman,* judge trial referee, denied the plaintiffs' motion for an order of discretionary stay; thereafter, the plaintiffs filed motions for review with this court. *Motion for review of order of no automatic appellate stay granted; relief denied. Motion for review of denial of discretionary stay granted; relief granted in part.*

*Megan L. Wade* and *James P. Sexton,* in support of the plaintiffs' motions for review.

*Opinion*

SUAREZ, J. The plaintiffs, Peter Rek and Carisa Rek, the legal guardians of a minor child named Caleb,[1] have appealed from the December 15, 2021 orders of the trial court requiring Caleb to suspend contact with his long-term personal counselor and engage with a new therapist with the goal of working toward the resumption of visitation with Caleb's maternal grandparents, the defendants, Kirk Pettit and Charlotte Pettit. On January 7, 2022, the defendants filed a motion with the trial court seeking an order that, notwithstanding the plaintiffs' appeal, there is no automatic stay of the court's December 15, 2021 orders. On March 8, 2022, the court issued a written order indicating that there is no automatic stay of custody and visitation orders and that the plaintiffs are to comply immediately with its December 15, 2021 orders. On March 17, 2022, the plaintiffs filed a motion for discretionary stay, which the court denied on March 22, 2022.

Before this court are two motions for review filed by the plaintiffs.[2] The first motion, filed on April 4, 2022, asks this court to review and reverse the court's March 8, 2022 order determining that there is no automatic appellate stay in effect. The second motion, filed on April 21, 2022, asks this court to review and reverse the court's March 22, 2022 order denying their request for a discretionary stay. On the first motion for review, we conclude that the underlying orders are visitation orders that are not automatically stayed pursuant to Practice Book § 61-11 (c). On the second motion for review, we conclude that the court did not abuse its broad discretion in denying the plaintiffs' request for a discretionary stay only insofar as the court ordered the parties to engage with a new therapist for the purposes of facilitating visitation; we reach a different conclusion with respect to the court's order suspending Caleb's contact with his long-term personal counselor. We therefore grant the plaintiffs' April 4, 2022 motion for review, but deny the relief requested therein, and grant the April 21, 2022 motion for review, and grant, in part, the relief requested therein.

The following undisputed facts and procedural history are pertinent to the resolution of these motions. Caleb was born in 2010. When Caleb's biological parents became unavailable to care for him, the plaintiffs and the defendants filed petitions for custody of Caleb with the Superior Court for Juvenile Matters in Waterbury. On August 8, 2016, the Superior Court for Juvenile Matters, *Dooley, J.*, appointed the plaintiffs as legal guardians of Caleb, and approved a visitation agreement between the plaintiffs and the defendants and entered it as an order of the court. The order further provided that enforcement or modification thereof would be in family court. On November 29, 2016, the plaintiffs filed the underlying action seeking to modify the terms of

the visitation agreement. The defendants objected and filed a motion for contempt. This protracted litigation followed. Notwithstanding court orders to the contrary, visitation actually ceased in August, 2017, allegedly due to Caleb's anxiety in the presence of the defendants. Attorney Rosa C. Rebimbas was appointed as guardian ad litem (GAL) for Caleb on September 10, 2018.

The court, *Coleman, J.*, conducted an evidentiary hearing from September 3 through 6, 2019, on the plaintiffs' November 29, 2016 motion. Among the witnesses who testified at the 2019 trial were the GAL; Patricia Levesque, Caleb's personal counselor since 2016; Constance Mindell, who, the court found, had been involved to "assist the parties in working together for the best interests of the child" since September, 2017; and Kristan McClean, who, the court found, has "been involved since January 14, 2019, to help the parties foster a better relationship" between Caleb and the defendants. On January 3, 2020, the court, in a memorandum of decision, granted the plaintiffs' motion to modify and issued orders requiring progressively increased contact (letters, phone calls, and "fun time" outings with Peter Rek, Kirk Pettit, and Caleb). It specifically required the parties to "continue to work together in a therapeutic setting with Kristan McClean or some other mutually agreed upon duly licensed and qualified therapist to arrive at a schedule of visitation . . . ." The court gave the parties a one year report back date. Neither party appealed from the January 3, 2020 orders.

On February 26, 2020, the defendants filed a motion for order claiming that the plaintiffs would not cooperate in finding a different "mutually agreed upon" therapist to work toward visitation, to which the plaintiffs objected. Court operations were curtailed shortly thereafter due to the COVID-19 pandemic.

On January 5, 2021, the parties appeared before Judge Coleman for their report back date. On January 26, 2021, the plaintiffs filed a motion for order, asking the court to preclude the defendants from rearguing issues that predated the January 3, 2020 decision. The defendants objected. The parties and their counsel appeared before the court on various dates in early 2021. On February 16, 2021, the plaintiffs filed a request for an evidentiary hearing because there was a disagreement as to whether the parties had complied with the court's January 3, 2020 orders. Thereafter, the court requested that each side provide the name of a family therapy professional acceptable to that side. On April 7, 2021, the defendants filed a notice of compliance, giving the name of Philip J. Mays. On April 8, 2021, the plaintiffs filed their notice of compliance, giving the names of three professionals at Connecticut Behavioral Health. In that notice, they also requested "an evidentiary hearing on the issue of whether . . . engag[ing] with another therapist for the purpose of determining

whether visitation between [the defendants and Caleb] is in the best interest of the minor child."

The court heard testimony on June 1, June 28, and August 16, 2021, on the plaintiffs' April 8, 2021 request for a hearing. At that hearing, McClean testified that, beginning in January, 2019, her role was to work with the parties to establish a safe and healthy visitation relationship. In alternating weeks, she met with Caleb and then the defendants, to work through Caleb's concerns with "past interactions" with the defendants in order to "work toward" a joint session. There was one joint session in the summer of 2019, which she described as "uncomfortable" for Caleb. McClean testified that she had not met with the defendants since September, 2019. She testified that she believed they were unwilling to work with her, although she had "made herself available." She continued to meet remotely with Caleb and the plaintiffs approximately once per month through September, 2020. The court also heard testimony from Kirk Pettit, Carisa Rek, Levesque, and the GAL, and then heard closing arguments.

On December 15, 2021, the court issued a memorandum of decision in which it reversed its January 3, 2020 orders and issued a series of new orders. The court, inter alia, (1) ordered the parties to discontinue working with McClean altogether, (2) "suspended until further order of the court" any contact between Caleb and Levesque, and (3) ordered the parties to engage the services of Mays, the defendants' chosen family therapist, to "conduct one therapeutic/reunification visit per month" with Caleb, and "as appropriate including with [the defendants] and any other parties deemed necessary." Those orders also required progressively increased contact (letters, phone calls, and "fun time" outings with Peter Rek, Kirk Pettit, and Caleb) and monthly in-person visits between Caleb and the defendants, supervised by one or both of the plaintiffs, beginning as soon as March, 2022, "[i]f and when deemed appropriate" by Mays.

On January 3, 2022, the plaintiffs filed this appeal. On January 4, 2022, the plaintiffs' appellate counsel notified Mays, by way of email, that he had filed an appeal of the court's January 3, 2022 orders and, as a result of the automatic stay stemming from the appeal, he advised the plaintiffs not to meet with him. On January 10, 2022, the defendants filed a motion for order in the trial court, asking the court to terminate the appellate stay, if one existed. The plaintiffs objected on substantive and procedural grounds.[3] The plaintiffs also filed a motion for a mistrial, which the court denied. On January 28, 2022, the plaintiffs filed an amended appeal challenging the denial of their motion for a mistrial.

I

In their first motion for review, filed on April 4, 2022, the plaintiffs challenge the court's determination that an automatic appellate stay was not in effect and argue that the December 15, 2021 orders are not "orders of . . . visitation" that are exempt from the automatic appellate stay. We are not persuaded.

Our review of the plaintiffs' claim requires us to construe Practice Book § 61-11, particularly subsections (a) and (c). The interpretation and application of provisions of the rules of practice involves a question of law over which our review is plenary. See *Bouffard* v. *Lewis*, 203 Conn. App. 116, 120, 247 A.3d 667 (2021).

Practice Book § 61-11 governs stays of execution. Section 61-11 (a) provides in relevant part: "Except where otherwise provided by statute or other law, proceedings to enforce or carry out the judgment or order shall be automatically stayed until the time to file an appeal has expired. If an appeal is filed, such proceedings shall be stayed until the final determination of the cause. . . ." Pursuant to § 61-11 (c), certain orders in family matters are exempt from the automatic stay provision: "Unless otherwise ordered, no automatic stay shall apply . . . to orders of . . . custody or visitation in family matters brought pursuant to chapter 25 . . . ."

The plaintiffs maintain that the December 15, 2021 orders change "Caleb's medical providers with the intent of potentially leading to future visitation. To be clear, not a single [December 15, 2021] order actually orders any visitation between Caleb and the [defendants] on a date certain. As a result, they are not visitation orders . . . ." In support of their position, the plaintiffs rely on the "plain meaning" of the term "visitation order." The plaintiffs argue that most of the orders do not "[establish] a visiting time between Caleb" and the defendants, but rather "detail progressive potential contact that is explicitly contingent on" whether Mays deems such contact to be appropriate. And because, according to the plaintiffs, an order requiring them to change therapists *is* automatically stayed, so too is any "progressive potential contact."[4] We are not persuaded.

The court's authority to adjudicate the dispute between these parties arises under General Statutes § 46b-56, which allows the court to issue "[o]rders [regarding] custody, care, education, visitation and support of children." General Statutes § 46b-56 (i) clearly states that "[a]s part of a decision concerning custody or visitation, the court may order either parent or both of the parents and any child of such parent to participate in counseling . . . provided such participation is in the best interest of the child." Our Supreme Court, in *DiGiovanna* v. *St. George*, 300 Conn. 59, 75, 12 A.3d 900 (2011), described the "tools in [the trial court's] arsenal to effectuate visitation" as including "prescrib[ing] spe-

cific conditions under which visitation would take place to address legitimate concerns of either party."[5] The court can order "appropriate counseling sessions geared toward the cessation of the animosity between the parties or, at the least, minimizing the possibility that such animosity will have a negative impact upon the child." Id., 76. The court also may use its contempt powers to coerce a recalcitrant party's compliance. See id. "[T]he best interest of the child guides the court in determining how best to foster [the] relationship. Those considerations may indicate . . . counseling, as well as restrictions on the time, place, manner and extent of visitation." Id., 78.

In the present case, in its January 3, 2020 memorandum of decision, the court suspended the August 8, 2016 orders of visitation, finding that those orders were not in Caleb's best interest at that time. The court, however, expressly and clearly ordered, inter alia, the parties to "continue to work together in a therapeutic setting with . . . McLean *or some other* mutually agreed upon duly licensed and qualified therapist to arrive at a schedule of visitation between [the defendants] and Caleb." (Emphasis added.) The court went on to issue further orders to reinstate visitation between the defendants and Caleb, as deemed appropriate by the therapist. Neither party appealed from these orders.

In its December 15, 2021 memorandum of decision, the court explicitly found that its January 3, 2020 orders were not complied with and little effort had been made to achieve contact between Caleb and the defendants. The court issued new orders that pertain to the "manner and extent of visitation" and contemplate progressively increased contact, with Mays' approval, geared toward the possibility of resuming regular monthly visits between Caleb and the defendants. Visitation orders expressly are exempted from the automatic appellate stay by Practice Book § 61-11 (c). Because we conclude that the orders at issue are "orders of . . . visitation" within the meaning of § 61-11 (c), they are not automatically stayed. Accordingly, the relief requested in the first motion for review is denied.

II

In their second motion for review, filed on April 21, 2022, the plaintiffs challenge the court's decision denying their request for a discretionary stay pursuant to Practice Book §§ 61-11 (c) and 61-12 pending the resolution of this appeal. They maintain that: (1) "the trial court failed to weigh properly the factors set forth in Practice Book § 61-11 (c) in support of its denial of a discretionary stay; and (2) the findings upon which the trial court based its decision are clearly erroneous, finding no support in the record . . . ." We conclude that the court did not abuse its broad discretion in determining that staying those orders would not be in the child's best interest. We further conclude, however, that the

court abused its discretion in suspending the "psycho-therapy sessions and any other contacts between [Caleb] and Patricia Levesque," his personal therapist since 2016, pending the resolution of this appeal.

This court reviews trial court orders concerning discretionary stays under an abuse of discretion standard. See *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 196 Conn. 451, 459, 493 A.2d 229 (1985). "In determining whether a trial court has abused its broad discretion . . . we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Kyle S.* v. *Jayne K.*, 182 Conn. App. 353, 362, 190 A.3d 68 (2018).

Practice Book § 61-11 (c) provides that a trial court may terminate or impose a stay in family matters following a hearing, provided the court considers the following factors relevant to this case: "(1) the needs and interests of the parties, their children and any other persons affected by such order; (2) the potential prejudice that may be caused to the parties, their children and any other persons affected, if a stay is entered, not entered or is terminated . . . (4) the need to preserve the rights of the party taking the appeal to obtain effective relief if the appeal is successful . . . and (6) any other factors affecting the equity of the parties."[6]

The court denied the plaintiffs' motion for a discretionary stay on March 22, 2022, and issued a memorandum of decision on April 11, 2022. In that decision, the court found that "absolutely nothing had been done in furtherance of the progressive steps set forth" in the court's initial January 3, 2020 decision. It determined that further delay of an opportunity for "another therapist to attempt to facilitate a functional relationship between Caleb and the defendants merely allows the assessment of the current therapists to go unchallenged and to become a self-fulfilling prophecy." The court was highly critical of Levesque, who testified that she "never discussed" the visitation issue with Caleb, yet repeatedly testified in various proceedings that the "slightest contact" with the defendants "might be incredibly damaging to Caleb." The court characterized her testimony as "speculat[ive]" no fewer than three times. The court found that the other providers *and* Caleb had "been influenced by Levesque."

The plaintiffs maintain that the court based its decision on a series of "core factual findings [that] are clearly erroneous." Among these are that McClean "never" held a joint session with the defendants and

Caleb; and that Levesque had "influenced" McClean. Other challenged findings include the court's characterization of the efforts by the various professionals to facilitate visitation as "pitifully feeble" and the suggestion that, if anything, Caleb's anxiety regarding the defendants has "gotten progressively worse."

The record before the court, however, supports a finding that Caleb has not visited with the defendants since the summer of 2019—months before the court's January 3, 2020 orders, and not at all since the court issued those orders. The court in its April 11, 2022 memorandum of decision, found that none of the court's January 3, 2020 orders had resulted in "progressively increased contact," nor had the parties "work[ed] together in a therapeutic setting . . . to arrive at a schedule of visitation." On this record, and for the limited purpose of determining whether the court abused its discretion in declining to stay its December 15, 2021 orders that the parties engage with a new therapist, Mays, to facilitate visitation, we are not left with a definite and firm conviction that the challenged findings were clearly erroneous.

In determining whether to enter a discretionary appellate stay of its orders in a family matter, the court must consider the "needs and interests" of the parties and weigh the "potential prejudice" that may be caused if a stay is not entered. See Practice Book § 61-11 (c) (1) and (2). In weighing those factors here, the court determined that Caleb's needs and interests were "paramount" and "[t]hose needs and interests are protected by the oversight of Mr. Mays, whose involvement is an essential part of the [court's] December 15, 2021 [decision]." The court found that, if Mays "determines that visitation between [Caleb and the defendants] should proceed, that visitation will occur under his professional and responsible guidance and direction." The court further found that the plaintiffs will not be prejudiced by allowing Caleb to begin therapy with Mays because it is possible that Mays could agree with the plaintiffs and recommend against visitation.

Pursuant to Practice Book § 61-11 (c) (6), the trial court was free to consider "any other factors affecting the equity of the parties." Here, the court found: (1) the parties had entered into the negotiated visitation agreement with the juvenile court in 2016, and the plaintiffs almost immediately moved to modify it; (2) the plaintiffs have "never . . . attempted to offer or produce any evidence" that the defendants "failed to protect [Caleb] from inappropriate adult situation and behavior," despite the representation in their 2016 motion to modify; (3) the plaintiffs unilaterally terminated visitation in 2017; and (4) the plaintiffs have not done "all they could" to alleviate Caleb's anxiety regarding visitation. The court apparently weighed these findings heavily in determining that immediately engaging

with a new family therapist to facilitate visitation was in Caleb's best interest.

In arguing that the court abused its broad discretion in refusing to stay that order pending the resolution of their appeal, the plaintiffs emphasize contrary evidence that was before the court. McClean testified that the defendants were unwilling to follow through with therapeutic recommendations. The GAL recommended reengaging with McClean because, in her opinion, engaging yet another professional to facilitate visitation would *not* be in Caleb's best interest. The court had before it a three page document handwritten by Caleb and introduced through Levesque, in which Caleb stated that he was eleven and one-half years old and just wished that the defendants would "leave [him] alone" because they make him "uncomfortable" and "all the therapy is thanks to them . . . and I think I have [post-traumatic stress disorder]. . . ." Levesque testified that Caleb's response to visitation with the defendants was that of someone who experienced "trauma" and who had been diagnosed with "post-traumatic stress disorder." In their motion for review, the plaintiffs acknowledge that the court was free to discredit all of this evidence. They emphasize, however, that, in order for the court to have reached the conclusions that it did, there must be some affirmative evidence that engaging with Mays is in Caleb's best interest, and they argue that no such evidence was presented because Mays was not called to testify.

We are troubled by the court's heavy reliance on the professional judgment of Mays in fashioning its orders when Mays was not presented as a witness at trial nor were his credentials presented as evidence. However, because contact between the defendants and Caleb has been minimal since August, 2017 (and apparently non-existent since August, 2019, notwithstanding court orders to the contrary), the court determined that an "assessment concerning whether . . . [a visitation relationship] is feasible should be done *without any further delay*." (Emphasis added.) The defendants' position at trial was that McClean had "failed" to facilitate a visitation relationship between the defendants and Caleb and that, instead, Mays should be engaged to conduct at least one "therapeutic reunification" visit per month with them and Caleb. The court's various orders clearly indicate that it was dissatisfied with McClean's efforts at facilitating visitation. The court weighed the Practice Book § 61-11 (c) factors in a manner that furthered Caleb's interests in a relationship with the defendants, and declined to stay its December 15, 2021 orders requiring the parties to engage with Mays for the purpose of assessing whether visitation is feasible. On this record, we cannot say that the court abused its broad discretion in declining to stay those orders pending the resolution of the plaintiffs' appeal.

Nevertheless, we conclude that the court abused its broad discretion when it did not stay its December 15, 2021 order that Caleb suspend all contact with Levesque, his personal therapist since August, 2016, pending the final resolution of this appeal. The evidence before the court was that, unlike McClean, the GAL, and other professionals tasked with facilitating a visitation relationship between Caleb and the defendants, Levesque was *not* engaged at the behest of the court. Moreover, it appears that the defendants' request for relief with respect to Levesque was raised, for the first time, during their counsel's closing argument when counsel asked the court to "remove Patty Levesque from this boy's life."[7] When counsel concluded argument, the GAL asked for permission to "speak up" in response to the defendants' late "modification of the proposed orders," which the court permitted. The GAL indicated that Levesque is Caleb's "personal counselor," not a "court-ordered" professional, and that Caleb "does have a bond [with Levesque and] . . . that any action by this court to [affect] that bond would be detrimental to the child and not in the child's best interest." There was no evidence presented to support a contrary opinion.

To be clear, we make no determination, at this juncture, that the court erred in its assessment of Levesque's credibility or the progress that Caleb had made in his treatment with her. However, the court did not have before it any evidence as to the impact the suspension of therapy between Caleb and Levesque would have on Caleb's best interest. The court only heard a suggestion by the defendants' counsel at closing arguments that the court should suspend the therapy. Moreover, we find it compelling that the GAL's response to the defendants' eleventh hour request to remove Levesque from Caleb's life was to seek permission to address the court to make known her professional assessment that such an order would not be in Caleb's best interest. We conclude that, in declining to stay this order, the court did not adequately account for the potential harm to Caleb that could follow from the disruption of his relationship with his long-term personal counselor. We agree with the plaintiffs insofar as they ask this court to stay that portion of the trial court's December 15, 2021 orders pending the final resolution of this appeal. We therefore grant the second motion for review and grant relief limited to this order.

The motion for review filed on April 4, 2022, is granted, but the relief requested therein is denied. The motion for review filed on April 21, 2022, is granted, and the relief requested therein is granted, in part, in that the court's December 15, 2021 order that "[t]he psycho-therapy sessions and any other contacts between the minor child and Patricia Levesque shall be suspended until further order of the court" is stayed pending the final resolution of this appeal; the remain-

der of the relief requested is denied.

In this opinion the other judges concurred.

[1] The plaintiffs are very close friends of Caleb's biological mother.

[2] The plaintiffs filed several other motions seeking relief from this court. On March 25, 2022, this court ordered a temporary stay of the trial court's orders pending the resolution of these motions for review. See Practice Book §§ 60-1 and 61-14. This court also directed the court to comply with Practice Book § 64-1 (b) and issue a decision setting forth the factual and legal basis of its March 22, 2022 order denying the plaintiffs' motion for a discretionary stay. The court issued its memorandum of decision on April 11, 2022.

[3] After an appeal is filed, Practice Book § 61-11 (e) requires that a motion to terminate an appellate stay be filed with the appellate clerk.

[4] The plaintiffs also argue that the court's consideration of the issue of whether there was an appellate stay of the December 15, 2021 orders "violated the automatic stay that was created by the plaintiffs appealing the trial court's denial of their motion for mistrial." This argument merits little discussion. See *Ahneman* v. *Ahneman*, 243 Conn. 471, 482–83, 706 A.2d 960 (1998) ("It is well established that a trial court maintains jurisdiction over an action subsequent to the filing of an appeal. . . . Moreover, a trial court's postappeal jurisdiction persists regardless of any degree of substantive connection between the postappeal motion and the issue on appeal." (Citations omitted; internal quotation marks omitted.)).

[5] In *DiGiovanna* v. *St. George*, supra, 300 Conn. 73–79, our Supreme Court considered whether a trial court may deny a nonparent's application for visitation when the applicant has met the stringent burden of proof established in *Roth* v. *Weston*, 259 Conn. 202, 234–35, 789 A.2d 431 (2002). In *DiGiovanna*, our Supreme Court treated, as uncontested, that the applicant had proven by clear and convincing evidence that the requisite relationship existed between the applicant and the child pursuant to *Roth*, and that the child would suffer the requisite level of harm if the relationship was not permitted to continue. *DiGiovanna* v. *St. George*, supra, 61. In resolving that appeal, our Supreme Court primarily addressed the *implementation* of visitation under a best interest of the child standard. See id., 73–79. Implementation of visitation orders is also the issue in this matter.

[6] Practice Book § 61-11 (c) (3) and (5) are factors specific to financial issues in a marital dissolution action that are not relevant to the resolution of this matter.

[7] Relevant portions of the closing argument by the defendants' counsel are as follows:

"It's really perplexing on how we have five years of intensive therapy with Patty Levesque and we've got no amelioration of his anxiety. His anxiety, as you pointed out, I don't know if you were saying his anxiety is regressing but there's regression not progression. Why? It really makes no sense. . . .

"Our proposed orders are to utilize Mr. Philip Mays . . . conduct one therapeutic reunification visit at minimum per month between Caleb and his grandparents. And that's without the presence of Peter and [Carisa] Rek. . . . [For reasons stated, Ms. McClean] is not the right person for this job. I do believe Mr. Mays is. . . .

"I think Ms. McClean had the opportunity to get a breakthrough going and she failed. It's too bad that so much time has passed and I think our postorders appreciate that. . . . [We] are very measured in our request. Once a month therapeutic visitation, reunification visitation, supervised by Mr. Mays. Is that so much to ask? Under the circumstances, Your Honor, it's the best interest for Caleb. . . . His best interest is to deal with this irrational perspective of his grandparents in a therapeutic setting with a competent professional.

"I don't know if Your Honor would take the steps that it would take to remove Patty Levesque from this boy's life. I know you have the authority to do that. I think she's testified, I think three times now and I've never been more certain that that should happen. So, I would, I think, modify my proposed orders just slightly and ask Your Honor to at least consider that. Is she the source? I don't think so. But is she helpful? I don't think so. Will you order it? I'm not so sure you will. But I could see, Your Honor, if you tie it together. If we remove her and we add one person one time per month I think it's actually going to benefit Caleb quite a bit."