# NADIA NASHID *v.* RAMEZ ANDRAWIS
## (AC 20916)

Schaller, DiPentima and Hennessy, Js.

Argued February 24—officially released May 25, 2004

*Campbell D. Barrett*, with whom were *Jonathan P. Budlong* and, on the brief, *C. Michael Budlong*, for the appellant (defendant).

*James Wu*, for the appellee (plaintiff).

*Jacqueline A. Wilson*, for the minor children.

*Opinion*

DiPENTIMA, J. In this appeal from the judgment in the parties' marital dissolution action, the defendant, Ramez Andrawis, claims that the trial court improperly (1) considered his in-court behavior at trial as a factor when determining the cause of the marital breakdown, (2) delegated its judicial authority to the attorney for the minor child and (3) entered a time limited alimony order that was unsupported by the evidence. We affirm in part and reverse in part the judgment of the trial court.

The parties, both physicians, were married in 1985. They have two children. Between 1988 and 1990, the defendant completed two years of a preliminary surgical residency program at New Britain General Hospital. He spent the next three years in a residency program in the Bronx, New York. While the defendant was working in the Bronx, the plaintiff, Nadia Nashid, resided in Connecticut. During that time, she established herself in the local medical community of northeastern Connecticut, becoming a partner at Pathology Associates of Windham, P.C., where she earned a base salary of

$217,000. From the summer of 1993 through 1995, the plaintiff and the defendant resided together in Connecticut. In 1995, the defendant commenced a residency in urology at George Washington Medical Center in Washington, D.C. He completed the residency in July, 1999, and began working full-time at George Washington University Hospital at an annual salary of $118,000. Over the course of the summer of 1995, the plaintiff and the defendant quarreled over whether the family should relocate to Washington, D.C. The plaintiff also testified that she was the victim of the defendant's verbal and physical abuse.

At trial, the plaintiff called John Felber, a physician, to testify regarding the board certification of urologists and the range of income of a board certified urologist. After the trial, the court issued a memorandum of decision. The decision established financial orders and contained orders dissolving the marriage and establishing a parenting plan. The defendant was ordered to pay $148 per week in child support while the plaintiff was ordered to pay nonmodifiable alimony in the amount of $2500 per month for a period of four years. Additional relevant facts will be set forth as necessary.

I

The defendant first claims that the court improperly considered his demeanor at trial as a factor when determining the cause of the marital breakdown. We disagree.

Our standard of review in domestic relations cases is well settled. "We will generally not disturb an order unless the court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . In determining whether there has been an abuse of discretion, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness.

. . . [W]e do not review the evidence to determine whether a conclusion different from the one reached could have been reached. . . . Further, we must accept the factual findings of the court unless they are clearly erroneous in light of the evidence presented in the record as a whole." (Citations omitted; internal quotation marks omitted.) *Syragakis* v. *Syragakis*, 79 Conn. App. 170, 173, 829 A.2d 885 (2003).

The defendant relies on *Roach* v. *Roach*, 20 Conn. App. 500, 568 A.2d 1037 (1990). His reliance is misplaced. As the defendant correctly states, *Roach* stands for the proposition that the demeanor of a party testifying at trial cannot be the basis of the breakdown of the marriage because the cause of the dissolution, by necessity, must have occurred prior to trial. Id., 507. That is not the case here, where the court observed the defendant's in-court behavior and used it to make a conclusion regarding the defendant's *credibility*. That assessment of credibility at trial is proper because "it was the sole province of the court to determine the credibility of the witnesses and the weight to be given to the evidence. The trial court, as the finder of fact, is in the best position to assess the credibility of the witnesses testifying before it." (Internal quotation marks omitted.) *Petronella* v. *Venture Partners, Ltd.*, 60 Conn. App. 205, 212–13, 758 A.2d 869 (2000), appeal dismissed, 258 Conn. 453, 782 A.2d 97 (2001).

In its articulation of decision filed May 14, 2003, the court stated that "the plaintiff is the *more credible witness* with regard to issues financial and custodial. The testimony of Dr. Laura Gunther is persuasive with regard to custodial issues, and the testimony of [Felber] is persuasive regarding the defendant's financial potential. *Coupled with* the court's observations of the behavior of the defendant and the plaintiff's credibility regarding finances, the economic history and the parental history of the marriage, the court found that the

defendant's behavior was the cause of the breakdown of the marriage and entered orders regarding visitation, alimony, the qualified domestic relations order and the property distribution." (Emphasis added.) In a second articulation, the court stated that "after observing each party's behavior at the trial and assessing their *credibility as witnesses* when each dealt with issues of fault and causality, the court assigned the defendant husband a meaningful role in the breakdown of the marriage." In its final articulation, the court stated that the "defendant's behavior, his speech, his body language, his testimony, were all bases for the court's conclusion that the *defendant lacked credibility.*" (Emphasis added.) In this case, the court's articulations make it clear that the court considered, as it may, the defendant's behavior in reaching the conclusion that the defendant lacked credibility. It did not, as the defendant claims, base its decision regarding the cause of the dissolution on the defendant's behavior at trial. Moreover, "a trial court enjoys a wide latitude in the type of finding it may make as to the cause of the dissolution." *Henin* v. *Henin*, 26 Conn. App. 386, 390, 601 A.2d 550 (1992). We conclude, therefore, that the court did not abuse its discretion.

## II

The defendant next claims that the court improperly delegated its judicial authority. Specifically, the defendant cites *Masters* v. *Masters*, 201 Conn. 50, 64–65, 513 A.2d 104 (1986), for the proposition that only a Superior Court judge can make binding decisions regarding substantive parenting issues. We agree with the defendant.

The issue was not raised at trial. In fact, the parties agreed to the specific provisions delegating the judicial authority. Accordingly, the defendant requests that we review the issue under the plain error doctrine. See Practice Book § 60-5. "Review under the plain error doctrine . . . is reserved for truly extraordinary situa-

tions where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *Grayson* v. *Wofsey, Rosen, Kweskin & Kuriansky,* 231 Conn. 168, 194, 646 A.2d 195 (1994).

It is well settled authority that "[n]o court in this state can delegate its judicial authority to any person serving the court in a non-judicial function. The court may seek the advice and heed the recommendation contained in the reports of persons engaged by the court to assist it, but in no event may such a nonjudicial entity bind the judicial authority to enter any order or judgment so advised or recommended." *Cotton* v. *Cotton,* 11 Conn. App. 189, 194–95, 526 A.2d 547 (1987).

In this case, the parties agreed to proposed orders that were filed by counsel for the minor children. The trial court incorporated those orders into its dissolution decree. The orders required both parties to give detailed notice of a number of facets of the parenting access schedule. The agreement stated in relevant part that "[t]he parents are encouraged to exchange the required information directly to each other, in writing, via fax. Should there be a controversy, the parents shall submit the issue to the Attorney for the minor children for binding arbitration. . . ." "Arbitration is a creature of contract and the parties themselves, by the terms of their submission, define the powers of the arbitrators. . . . The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted." (Citations omitted; internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.,* 258 Conn. 101, 109, 779 A.2d 737 (2001). There is no express

language restricting the breadth of issues, no reservation of explicit rights and no contingency for court review. Therefore, the agreement is unrestricted, and where, as here, the authority of the arbitrator has not been restricted, the court's review is strictly limited. See *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, 252 Conn. 416, 427, 747 A.2d 1017 (2000) (" 'resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission' "). Because the parties agreed to submit to arbitration and set forth the powers of the arbitrator, the scope of judicial review is determined by the terms of the parties' agreements and the provisions of General Statutes § 52-418 (a).[1] See *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 185, 530 A.2d 171 (1987). That limited review circumvents the court's role in implementing its judgment. The level of review, therefore, runs afoul of the mandate of General Statutes § 46b-56, which requires that "[a] court exercising its equitable jurisdiction with regard to custody has the duty to assure itself that its judgment will be implemented equitably to serve the best interests of the children . . . ." (Internal quotation marks omitted.) *Bouchard* v. *Sundberg*, 80 Conn. App. 180, 189, 834 A.2d 744 (2003). Although we recognize that both parties agreed to those conditions, we conclude that submitting

[1] General Statutes § 52-418 (a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

those issues to the attorney for the minor children for binding arbitration was an improper delegation of judicial authority. Insofar as the proposed orders directed that those child related matters be resolved through binding arbitration, there was plain error, and the orders must be modified to delete the delegation of judicial authority to the attorney for the minor children.

### III

The defendant's final claim is that there was insufficient evidence to allow the court to enter a time limited alimony order requiring the plaintiff to pay him alimony of $2500 per month for a period of four years.[2] Although not explicitly stated by the defendant, we note that what is at issue is the term of the alimony and not its amount. Specifically, the defendant argues that the testimony of the plaintiff's witness, Felber, provided no factual support for the four year alimony order.

The standard of review "of a trial court's exercise of its broad discretion in domestic relations cases is limited to whether that court correctly applied the law and whether it could reasonably conclude as it did. . . . The trial court must consider all relevant statutory criteria in a marital dissolution action but it does not have to make express findings as to the applicability of each criteria. . . . The trial court may place varying degrees of importance on each criterion according to the factual circumstances of each case. . . .

"[Our Supreme Court] has dealt with challenges to an award of time limited alimony on numerous occasions. . . . The trial court does not have to make a detailed finding justifying its award of time limited alimony. . . . Although a specific finding for an award of time limited alimony is not required, the record must indicate the basis for the trial court's award. . . . There must be

---

[2] Both the amount and term of the alimony were nonmodifiable.

sufficient evidence to support the trial court's finding that the spouse should receive time limited alimony for the particular duration established. If the time period for the periodic alimony is logically inconsistent with the facts found or the evidence, it cannot stand." (Citations omitted; internal quotation marks omitted.) *Ippolito* v. *Ippolito*, 28 Conn. App. 745, 751–52, 612 A.2d 131, cert. denied, 224 Conn. 905, 615 A.2d 1047 (1992).

The defendant argues that it was entirely speculative for the court to find that the "four year period will give [the defendant] sufficient opportunity to rise to the substantial income available to medical specialists in the field he chose." There is sufficient evidence in the record to support the court's award of a time limited alimony. The defendant himself testified that to become a board certified urologist, he would have to pass a two part exam. Moreover, he testified that he already had passed the first part of the exam. Felber testified that it would take the defendant approximately three to four years to become a board certified urologist. Thus, the four year period of alimony should be a sufficient amount of time for the defendant to attain the status of a board certified urologist. Felber also provided testimony as to the range of salaries for board certified urologists who were partners in specialty groups on the East Coast, including Connecticut and Washington, D.C. Felber did not testify as to the salary range of an employee of a specialty group. The defendant claims that in light of that failure, there was no evidence justifying the cessation of alimony after four years. We disagree with the defendant.

On the basis of Felber's testimony, the court reasonably could have inferred that after four years, the defendant's salary would "rise to the substantial income available to medical specialists in the field he chose." The court found that the certification process would take three to four years to complete and that after

the defendant became board certified, his salary would increase. As a result, we conclude that the four year period of alimony was logically consistent with the evidence. Consequently, the defendant's argument fails.

The judgment is reversed only as to the submission of matters pertaining to parenting issues to the attorney for the minor children for binding arbitration and the case is remanded with direction to delete that provision and to render judgment as on file except as modified in accordance with this opinion.

In this opinion the other judges concurred.