******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

D. S. *v.* D. S.*
(AC 44748)

Prescott, Suarez and Bishop, Js.

*Syllabus*

The plaintiff appealed to this court from the judgment of the trial court dissolving his marriage to the defendant and making certain financial orders. At the time of dissolution, the defendant was a partner in a large, international law firm. The plaintiff had been unemployed for many years despite having multiple postgraduate degrees and having earned a significant income during his previous employment. As part of the trial court's property award, it concluded that the defendant's potential stream of income pursuant to the retirement provisions of her law firm's partnership agreement was not property subject to equitable distribution under the applicable statute (§ 46b-81). With respect to alimony, the trial court issued a two part order. First, the defendant was required to pay certain monthly, after-tax amounts to the plaintiff, which obligation would terminate on the earliest to occur of the following circumstances: the defendant's death, the plaintiff's death, the plaintiff's remarriage, or when the defendant was no longer employed as an active partner of her law firm. Second, the alimony order provided that, after the defendant ceased to be employed as an active partner of her law firm and to the extent that she received any retirement payments pursuant to the partnership agreement, her obligations under the first part of the order would terminate and, instead, she would be required to pay 25 percent of her net, after-tax income to the plaintiff. Such obligation would terminate on the first to occur of certain circumstances, namely, the defendant's death, the plaintiff's death, or the time at which the defendant's receipt of income under the partnership agreement ceased. On the plaintiff's appeal to this court, *held*:

1. The trial court did not err in concluding that the defendant's prospective interest in the receipt of retirement benefits pursuant to her law firm's partnership agreement did not constitute marital property subject to equitable distribution pursuant to § 46b-81: on appeal, the plaintiff did not challenge any of the trial court's underlying factual findings but contested only its ultimate legal conclusion that the potential source of retirement income was too speculative and, therefore, that it represented a mere expectancy that could not be categorized as property for purposes of equitable distribution pursuant to § 46b-81, which this court concluded was not improper, as the trial court relied on what it deemed to be credible expert testimony indicating that the defendant's potential future unvested stream of income was not a property right or an asset because it had no value as of the date of dissolution, the payments involved variables, risks and requirements that were not fixed and were impossible to determine at such time, the future income was not carried as a liability by the law firm on its books, it was not guaranteed, transferrable, saleable, or funded, and it could be eliminated at any time.

2. The trial court's alimony order was not improper: the alimony order did not represent an improper delegation of judicial function but, rather, was more akin to an appropriate, self-executing order, as the court merely set forth the circumstances pursuant to which the order would be terminated or modified on the basis of the conduct of the parties, and the authorities relied on by the plaintiff in making his argument to the contrary were inapposite because, in those cases, the trial court delegated its judicial function by yielding to a nonjudicial officer the authority to make decisions that were binding on the parties; moreover, the plaintiff's alternative argument, that the trial court's alimony order represented an abuse of its discretion because, inter alia, it precluded any modifications that increased the amount or duration of the payments, was unavailing because the trial court's decision reflected that it devised a thoughtful and just order tailored to the parties' specific circumstances and abilities, including that the court found the plaintiff's claim that he was too busy to secure employment to be without merit, that the plaintiff had earned a substantial income during his previous

employment, that the plaintiff was responsible for the breakdown of the marriage, and that his wasteful pattern of spending placed the family in financial distress.

Argued October 20, 2022—officially released February 7, 2023

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Diana, J.*, rendered judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Diana, J.*, granted the defendant's motion for clarification, and the plaintiff appealed to this court. *Affirmed.*

*Charles D. Ray*, with whom were *Justyn P. Stokely*, and, on the brief, *Jessica D. Solotruk*, for the appellant (plaintiff).

*Kenneth J. Bartschi*, with whom were *Karen L. Dowd*, and, on the brief, *Thomas P. Parrino* and *Randi R. Nelson*, for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff, D. S., appeals from the judgment of the trial court dissolving his marriage to the defendant, D. S. On appeal, the plaintiff claims that the court improperly (1) concluded that the defendant's prospective interest in the receipt of retirement benefits pursuant to her law firm's partnership agreement did not constitute marital property subject to equitable distribution pursuant to General Statutes § 46b-81, and (2) issued an alimony order that, by its terms, terminates upon the undertaking of certain actions by the defendant on the basis that the order represents an improper delegation of judicial authority or an abuse of discretion by the court. We affirm the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are pertinent to our consideration of the issues on appeal.[1] The parties were married in 1990 in Woodbury, New York. They have two children, one born in 1999 and the other in 2005. At the time of the marital dissolution, the plaintiff was fifty-seven years old and in fair health. He has a bachelor's degree from Trinity College, a master's degree in business administration (MBA) from the Wharton School, University of Pennsylvania, and a master's degree in public administration from the John F. Kennedy School of Government at Harvard University. Notwithstanding these academic credentials and a history of substantial employment, earning, in some years, several hundred thousand dollars, the plaintiff has not worked for an employer since 2001 and had no earned income at the time of the dissolution. In 2002, the plaintiff formed his own private equity firm. That venture, however, was unsuccessful and officially dissolved in 2008. The court found that the reasons given by the plaintiff for his lack of employment since then were without merit.

At the time of the marital dissolution, the defendant also was fifty-seven years old. Educated in Canada, she holds MBA and Juris Doctor degrees from the University of Western Ontario. At the time of the marital dissolution, she was a partner in a large international law firm. Her annual gross income is approximately eight million dollars, and her annual net income is approximately 50 percent of her gross income. Were the defendant to retire from her current law firm, the terms of the firm's partnership agreement may entitle the defendant to a future stream of retirement income.

On November 6, 2017, the plaintiff filed this dissolution action against the defendant. On December 14, 2017, the defendant filed an answer and cross complaint against the plaintiff. After four years of intense litigation and discovery, the court held a contested dissolution trial over the course of several days in January, February, and March, 2021.[2] At the trial, the parties cumulatively introduced hundreds of exhibits and elicited testi-

mony from several fact and expert witnesses.

On April 19, 2021, the court rendered judgment dissolving the parties' marriage by way of a comprehensive memorandum of decision. The court found that the plaintiff was solely responsible for the breakdown of the parties' marriage due to "his abusive and intimidating treatment of the defendant, by his excessive wasteful pattern of spending placing this family in financial distress, along with his failure to contribute financially to the household in-kind and in fact, in addition to his baseless jealously and suspicious nature of the defendant's fidelity." The court made financial orders relating to parenting, child support, activity costs and schooling for the parties' children, alimony, health insurance and related costs, for the disposition of the parties' assets and liabilities, and for counsel fees.[3] At issue in this appeal are the court's property and alimony orders.

As part of its property award, the court concluded that the defendant's potential stream of income pursuant to the law firm's partnership agreement was not property subject to equitable distribution pursuant to § 46b-81. The court reasoned that "[t]he value of most of the assets and liabilities in this matter are clear and not in dispute. One financial matter that is unique in form and substance required undisputed expert testimony," and that related to the partnership agreement of the defendant's law firm, which included provisions for retirement income. In assessing the retirement provisions, the court found that the defendant's potential future receipt of retirement income was a mere expectancy, and the court concluded, therefore, that the potential stream of income did not meet the statutory definition of property as stated in § 46b-81.

As for alimony, the court awarded alimony to the plaintiff in a two part order. First, the court ordered the defendant to "pay alimony to the plaintiff in the monthly net after-tax amount of $35,000 for the first twelve months and $30,000 a month thereafter," which "alimony obligation shall automatically terminate upon the first of the following circumstances: (i) the defendant's death, (ii) the plaintiff's death, (iii) remarriage of the plaintiff, or (iv) when the defendant is no longer employed as an active partner of [the law firm]." Second, the court ordered that, "[a]fter the defendant ceases to be employed as an active partner of [the law firm], and to the extent that the defendant receives any payments pursuant to the [law firm's partnership agreement] . . . the defendant shall no longer pay alimony to the plaintiff as set forth [in the first part of the order], and instead, shall pay alimony to the plaintiff in the amount of 25 percent . . . of the defendant's net after-tax income actually received," and that "[t]his alimony obligation shall automatically terminate upon the first of the following circumstances: (i) when the defendant's receipt of income . . . under the [law

firm's partnership agreement] ceases, (ii) the defendant's death, or (iii) the plaintiff's death, not the plaintiff's remarriage." Furthermore, the court ordered that "[t]he amount of alimony as ordered herein under both scenarios shall be nonmodifiable upward and nonmodifiable as to increases in duration. The defendant's income generated by the retirement assets distributed to her shall not be includable in the defendant's income for purposes of adjudicating motions to modify alimony, nor shall any income generated by the defendant for employment subsequent to her departure from [the law firm]."

On April 28, 2021, the defendant filed a motion for clarification, requesting that the court permit her to deduct from her alimony payments any outstanding amounts of childcare expenses that the plaintiff fails to pay to the defendant, which the court granted on May 3, 2021. On May 10, 2021, the plaintiff filed a motion to reargue the court's dissolution judgment challenging, inter alia, the court's property and alimony awards, which the court denied on the same date. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court improperly concluded that the defendant's prospective interest in the receipt of retirement benefits pursuant to her law firm's partnership agreement did not constitute marital property subject to equitable distribution pursuant to § 46b-81. Notably, the plaintiff contests only the court's ultimate legal conclusion on appeal and does not challenge any of the court's underlying factual findings.[4] The plaintiff contends that the court should have concluded that the defendant's expectation to receive retirement benefits pursuant to her law firm's partnership agreement constituted marital property under § 46b-81 because her right to that future income is "sufficiently concrete, reasonable, and justifiable . . . ." We disagree.

At the outset, we note that the plaintiff claims that the provisions in the law firm's partnership agreement for retirement pay upon the retirement of partners create a property interest subject to equitable distribution pursuant to § 46b-81. In making this assertion, the plaintiff points to the language of *Bender* v. *Bender*, 258 Conn. 733, 785 A.2d 197 (2001), in which Justice Borden, speaking for the majority of a divided court, opined that the term "property" is not defined by § 46b-81 and, thus, should be broadly construed to include "every species of valuable right and interest, and includes real and personal property, easements, franchises, and incorporeal hereditaments . . . ." (Internal quotation marks omitted.) Id., 742–43. The plaintiff further claims that *Bender* created a two part framework for assessing whether a particular interest may be classified as property for purposes of distribution, namely, whether (1)

"the holder has an enforceable right akin to a valid contract claim," or (2) "the holder's expectation to receive [that] property is not too speculative, i.e., the expectation is 'sufficiently concrete, reasonable and justifiable as to constitute a presently existing property interest for equitable distribution' [purposes]." See also *Bender* v. *Bender*, supra, 748–49. In the case at hand, although the plaintiff acknowledges that the defendant's right to receive retirement pay does not meet the first prong of the test, he claims that her right to the future receipt of retirement pay satisfies the second prong of the test because it is not merely speculative.

In further support of his argument, the plaintiff cites to two cases decided by this court subsequent to *Bender*.[5] In *Czarzasty* v. *Czarzasty*, 101 Conn. App. 583, 584–86, 922 A.2d 272, cert. denied, 284 Conn. 902, 931 A.2d 262 (2007), this court was required to determine whether the defendant's unvested interest in his employer's performance based deferred compensation plan, which provided for an award in the amount of $100,000 at the conclusion of ten years of employment as long as a specific production goal was met, constituted property subject to equitable distribution under § 46b-81. Answering that question in the affirmative, this court noted that the trial court had found that the defendant had worked for his employer for eight years and that his level of production was on target to meet the required goal in order to receive the award of $100,000. Id., 594–95. This court noted, as well, that the trial court had found that the contingent nature of the defendant's interest was "readily obtainable by [the defendant] based upon his employment history, performance record and the projections of [his employer]," and, therefore, the trial court properly considered the amount of the prospective award in fashioning its property orders. (Internal quotation marks omitted.) Id., 595.

The plaintiff relies, as well, on another post-*Bender* opinion of this court. In *Ranfone* v. *Ranfone*, 103 Conn. App. 243, 244, 928 A.2d 575, cert. denied, 284 Conn. 940, 937 A.2d 698 (2007), this court was called on to determine whether the trial court had properly awarded the plaintiff 50 percent of the defendant's pension benefits as of the date the defendant would become eligible to collect them, which would include contributions made to the defendant's pension after the marital dissolution. There, the defendant argued that "assets earned after the date of the dissolution are not marital property" and that assets must be valued "as of the date of dissolution." Id., 247. Rejecting the defendant's argument, this court pointed out that, in *Bender*, the court had opined: "The fact that a portion of the pension benefits, once vested, will represent the defendant's service to the fire department after the dissolution does not preclude us from classifying the entire unvested pension as marital property." (Internal quotation marks omitted.) Id., 252.

Although not disagreeing that the court in *Bender* established a two part test, the defendant argues that her potential receipt of an uncertain amount of retirement pay is a mere expectancy not sufficiently concrete to remove it from the realm of speculation and, therefore, does not constitute an interest subject to distribution because the ultimate retirement payments she may receive are subject to many variables and uncertainties.

We next set forth the applicable legal principles and standard of review applicable to the plaintiff's first claim. The question of whether a particular retirement benefit constitutes distributable property pursuant to § 46b-81 turns on the meaning of the word "property" as it is contained in § 46b-81. See *Reville* v. *Reville*, 312 Conn. 428, 446, 93 A.3d 1076 (2014). Accordingly, because our task involves statutory interpretation, our review is plenary. See id. In conducting this review, we look not only to the common meaning of the term "property" but also to the prior judicial gloss on the term as it is used in the statute in question. *Bender* v. *Bender*, supra, 258 Conn. 742–43. In conducting our review of the court's determination in this instance, we examine the undisputed facts as found by the court to determine whether those facts support the court's conclusion that the defendant's prospects for the future receipt of retirement income are too speculative to be deemed property for equitable distribution under the statute. In sum, our review does not involve fact-finding by this court; rather, we conduct a legal analysis of whether the trial court's ultimate conclusion, based on the facts found at trial, is legally correct.

In *Bender*, our Supreme Court somewhat altered the lens through which this issue must be decided. Before *Bender*, our Supreme Court had held that, in order to be subject to distribution, a party's expectation of the future receipt of funds had to have the attributes of a property right, such that there was an enforceable contract right therein at the time of the dissolution. See id., 753. The majority's analysis in *Bender* began with the statute itself, § 46b-81,[6] which provides in relevant part that a court in a marital dissolution decree "may assign to either spouse all or any part of the estate of the other spouse. . . ." General Statutes § 46b-81 (a); see also *Bender* v. *Bender*, supra, 258 Conn. 741–42. The statute further provides that, "[i]n fixing the nature and value of the property, if any, to be assigned," the court should consider a number of factors that need not be iterated for the purpose of our analysis. General Statutes § 46b-81 (c). Recognizing that the statute did not include a definition of property, our Supreme Court opined that, in the context of marital dissolution and mindful of the equitable nature of the proceedings, the General Assembly intended for the term "property" to have a broad meaning. *Bender* v. *Bender*, supra, 742–43.

In *Bender*, Justice Borden reviewed our Supreme

Court's then previous treatment of certain potential benefits to determine whether those benefits qualified as property in the marital dissolution context. Id., 745–48; see also *Lopiano* v. *Lopiano*, 247 Conn. 356, 367, 752 A.2d 1000 (1998) (involving personal injury award); *Bornemann* v. *Bornemann*, 245 Conn. 508, 518, 752 A.2d 978 (1998) (addressing granted but not yet exercisable stock options); *Krafick* v. *Krafick*, 234 Conn. 783, 798, 663 A.2d 365 (1995) (concerning vested pension benefits). From this review of salient decisional law, Justice Borden concluded that our Supreme Court previously had determined that rights to the future receipt of income over which a person had some presently existing, enforceable right constituted marital property under § 46b-81. *Bender* v. *Bender*, supra, 258 Conn. 748. But *Bender* broke new ground in our Supreme Court's determination that a person's expectancy in the future receipt of funds could also be considered property, even if not yet presently an enforceable right, so long as the right to the future receipt was not merely speculative. Id., 749. In short, the court concluded that a present right to the future receipt of funds must be "sufficiently concrete, reasonable and justifiable as to constitute a presently existing property interest for equitable distribution purposes." Id. Applying these principles, the majority in *Bender* concluded that, because the defendant, a firefighter, had been employed in that capacity for nineteen years and his right to the receipt of pension benefits would vest after twenty-five years of service; id., 736–37; his expectancy was not too speculative because it was subject to limited variables such as his survival, continued faithful service, and the continued existence of the pension plan. Id., 749–50.

With that legal backdrop in mind, we next turn to the facts at hand. As noted previously, the defendant is a partner in a large international law firm. During trial, the defendant offered the expert testimony of Mark Harrison, a certified public accountant and attorney who previously had testified in marital dissolution actions as a forensic accountant and valuation expert. Pursuant to his engagement, Harrison examined the law firm's partnership agreement that came into evidence. The agreement provides, in relevant part, that a partner who has reached the age of fifty and completed at least ten years of service, may retire and receive a stream of payments, subject to certain limitations and caveats. As an initial matter, Harrison noted, the provisions for retirement payments set forth in the partnership agreement are not funded and are not carried on the firm's books as a liability. Rather, retirement payments are disbursed from the firm's future earnings. Harrison found it significant that the provision for retirement payments is subject to termination or reduction at any time by a vote of the firm's partners. Harrison pointed out, as well, a provision in the partnership

agreement reciting that the payments to a retiree could be adjusted by the firm's compensation committee and the concurrence of a certain number of partners on their determination that the payments are no longer fair to the remaining partners or the firm, or are otherwise inappropriate or inequitable to the former partner. Retirement payments also could be adjusted, deferred, or simply not paid, if the payments to retired partners exceed a certain percentage of the firm's income. In that event, the partnership agreement provides, payments to retirees may be deferred and not paid for up to five years and, if the payments cannot be made during the period of deferral, the obligation of the firm to make payments could be extinguished forever. Distinguishing the partnership retirement provisions from a qualified pension plan, Harrison characterized the defendant's potential to receive retirement payments from the firm as "the epitome of a mere expectancy."

Harrison commented that, although he had reviewed many law firms' partnership agreements with retirement provisions, he had never before seen a provision that reserved to a small group within the firm the absolute right to terminate or adjust a former partner's retirement pay at their sole discretion and on the basis that the firm's retirement payments to former partners unreasonably diminished the firm's profits available to current partners. Harrison also commented, as to the certainty of future retirement payments by the firm, that those payments depended on the continuing viability of the firm which, although international in nature, could not be viewed as a certainty because, as Harrison claimed, twenty-two firms of nearly the same size as the defendant's employer had either been disbanded or had declared bankruptcy since the financial crisis of 2007.

With respect to the valuation of the potential stream of payments the defendant may receive on her retirement, Harrison testified that it is not subject to a present valuation because of the variables and uncertainties in the retirement provisions of the partnership plan. In sum, Harrison testified that the retirement provisions could not be given a present value because doing so would require him to make speculative assumptions.

It is noteworthy that Harrison's assessment of the uncertainty of the defendant's potential retirement payments was not theoretic. On the basis of firm documents, he concluded that, over the past two decades, the firm had changed the formula by which a retiree's pay is determined as the firm's demographics have changed to reflect the greater number of retirees vis-à-vis active partners. He noted, in particular, how these changes reduced the potential payments to the defendant on her retirement and the potential for further reductions as the number of retirees continues to rise compared to the number of active partners.

Harrison concluded his testimony by stating that the defendant's potential stream of retirement payments cannot be considered to be an asset because the firm does not report the potential payments as a liability. In that regard, Harrison was speaking in accounting terms. When asked more specifically for his opinion as to whether the potential stream of payments could be considered as property under Connecticut's marital dissolution statute, Harrison replied in the negative, stating that there is not enough certainty in the potential stream for it to rise to the level of property as defined by our Supreme Court.

The trial court embraced the views expressed by Harrison.[7] In its memorandum of decision, the court stated: "The court relied on the credible expert testimony of . . . Harrison regarding the defendant's potential stream of income upon her retirement from her law firm. This stream of payments involves variables, risks and requirements that are not fixed and [are] impossible to determine at this time. This future income is not carried as a liability by the law firm on their books, not guaranteed, not transferable, not saleable, not funded and can be entirely eliminated at any time. Thus, its value today is found to be a mere expectancy. The court finds the defendant's potential future unvested stream of income is not a property right, or an asset, it has no worth and no value as of the date of this decision. It may produce a stream of income if all the stars line up in the future as it has for the past retired partners of the law firm."

On the basis of the facts adduced at trial regarding the defendant's potential receipt of retirement income, we do not disagree with the court's conclusion that this potential source of income is too speculative and, therefore, represents a mere expectancy that cannot be categorized as property for purposes of equitable distribution pursuant to § 46b-81.

## II

The plaintiff next challenges the court's alimony order, asserting that it represents an improper delegation of a judicial function or an abuse of discretion. The plaintiff first argues that the court's alimony order amounted to an improper delegation of a judicial function to a nonjudicial actor because the court provided the defendant with the ability to terminate her alimony obligation by leaving her employment with her present law firm. The plaintiff alternatively argues that, even if the court's alimony order was lawful, that order represented an abuse of discretion by the court because "it precludes modification of alimony upward and as to increases in duration, while, at the same time, permits the defendant to seek modification of the award and to take unilateral action to terminate her alimony obligation without seeking court approval by way of modifica-

tion." We are not persuaded that the court's order was improper.

We begin by recounting the court's alimony order, which has two parts. First, the court ordered the defendant to pay alimony to the plaintiff in the monthly net amount of $35,000 for the first twelve months after dissolution and, thereafter, in the amount of $30,000 per month to terminate on the death of the defendant, the plaintiff's death or remarriage, or at such time as the defendant is no longer employed as an active partner with her present law firm. The court also provided a "safe harbor" of up to an additional $200,000 that the plaintiff could earn beyond his earning capacity of $150,000 per annum, as found by the court, before the amount of alimony could be subject to downward modification. Second, the court further provided that, post-termination of the defendant's employment with her present law firm and to the extent that she receives any potential retirement payments pursuant to the law firm's partnership agreement, the alimony order would be modified and, instead, the defendant was ordered to pay alimony to the plaintiff in an amount equal to 25 percent of her net retirement income actually received. The court's memorandum of decision provided, as well, that the second part of the alimony obligation would terminate once the defendant was no longer receiving payments from the law firm, upon her death or the plaintiff's death but not upon his remarriage. Finally, the court ordered, as to both tranches of alimony, that the amounts ordered would not be subject to modification as to any increase either in amount or duration.

A

The plaintiff first argues that the court's alimony orders, insofar as they gave to the defendant the ability to terminate her alimony obligation by moving to another position and left the power to terminate alimony in her hands, constituted an improper delegation of a judicial function to a nonjudicial actor.

We first set forth the applicable legal principles and standard of review applicable to the plaintiff's argument that the court improperly delegated its authority. "[W]hether the court improperly delegated its judicial authority presents a legal question over which we exercise plenary review. . . . It is well settled . . . that [n]o court in this state can delegate its judicial authority to any person serving the court in a nonjudicial function. The court may seek the advice and heed the recommendation contained in the reports of persons engaged by the court to assist it, but in no event may such a nonjudicial entity bind the judicial authority to enter any order or judgment so advised or recommended. . . . A court improperly delegates its judicial authority to [a nonjudicial entity] when that person is given authority to issue orders that affect the parties or the children. Such

orders are part of a judicial function that can be done only by one clothed with judicial authority." (Citation omitted; internal quotation marks omitted.) *Thunelius* v. *Posacki*, 193 Conn. App. 666, 674, 220 A.3d 194 (2019).

In support of his argument of improper delegation, the plaintiff cites to the language of General Statutes § 46b-82,[8] concerning alimony, and also to decisional law. He claims to find support in this court's opinions in *Kyle S.* v. *Jayne K.*, 182 Conn. App. 353, 371–72, 190 A.3d 68 (2018), *Keenan* v. *Casillo*, 149 Conn. App. 642, 660–61, 89 A.3d 912, cert. denied, 312 Conn. 910, 93 A.3d 594 (2014), *Nashid* v. *Andrawis*, 83 Conn. App. 115, 120–22, 847 A.2d 1098, cert. denied, 270 Conn. 912, 853 A.2d 528 (2004), *Weinstein* v. *Weinstein*, 18 Conn. App. 622, 628–29, 561 A.2d 443 (1989), and in our Supreme Court's decision in *Valante* v. *Valante*, 180 Conn. 528, 532–33, 429 A.2d 964 (1980). Each of those decisions, however, is inapposite.

In *Kyle S.*, the salient issue related to a parent's contact with a minor child after a restraining order had been issued. *Kyle S.* v. *Jayne K.*, supra, 182 Conn. App. 370. In making its orders concerning parenting time and custodial rights, the trial court stated: "As far as [the child] being involved, I'm going to rely on Dr. Corson [who was the child's psychologist]. Dr. Corson will dictate the scope of your contact with [the child] in a therapeutic setting." (Emphasis omitted; internal quotation marks omitted.) Id., 370–71. The court stated further: "I am restricting that contact so that the mental health professional can be in charge." (Emphasis omitted; internal quotation marks omitted.) Id., 371. In reversing the trial court's order, this court opined: "A court improperly delegates its judicial authority to [a nonjudicial entity] when that person is given authority to issue orders that affect the parties or the children." (Internal quotation marks omitted.) Id.

In *Keenan*, the trial court had accepted the recommendation of the guardian ad litem to select a coparenting therapist and required the parties to select an individual therapist from a list prepared by the guardian ad litem. *Keenan* v. *Casillo*, supra, 149 Conn. App. 660. There, because the court did not yield to the guardian ad litem the authority to make any binding orders regarding parenting, this court determined that there had been no improper delegation of judicial authority to a nonjudicial officer. Id., 660–61.

In contrast, in *Nashid*, this court determined that an order by the trial court that the parties submit any custody disputes to binding arbitration was an improper delegation because the effect of such an order would be to yield the court's decisional authority to an arbitrator, a nonjudicial officer. *Nashid* v. *Andrawis*, supra, 83 Conn. App. 120, 122.

In *Weinstein*, as well, this court concluded that the

trial court had exceeded its authority by improperly delegating its judicial function to counsel for the minor children when the court's order included a provision requiring the parties to share certain child related expenses but also provided that, if they could not agree on whether to incur such expenses, they were to submit their disagreement to counsel for the minor children for a decision. *Weinstein* v. *Weinstein*, supra, 18 Conn. App. 628–29.

Finally, in *Valante*, our Supreme Court concluded that a court's order that the family relations division of the Judicial Branch make orders regarding the division of personal property was improper. *Valante* v. *Valante*, supra, 180 Conn. 532–33.

In response to the plaintiff's claims, the defendant argues that the court's alimony orders do not constitute an impermissible delegation of a judicial responsibility and that, to the extent the orders contain self-executing provisions, they are lawful. In making this assertion, the defendant cites decisional law supporting the notion that self-executing orders are lawful. For example, the defendant points to *Nation-Bailey* v. *Bailey*, 316 Conn. 182, 195–96, 200–201, 112 A.3d 144 (2015), in which our Supreme Court found no fault in an order adopting the parties' agreement that alimony would cease upon cohabitation. See also *Krichko* v. *Krichko*, 108 Conn. App. 644, 650, 948 A.2d 1092, cert. granted, 289 Conn. 913, 957 A.2d 877 (2008) (appeal withdrawn May 19, 2009).

Having reviewed the authorities advanced by the plaintiff, we find them inapposite because in each of these cases in which there was a reversal on appeal, the trial court had actually delegated its judicial function by yielding to a nonjudicial officer the authority to make decisions binding on the parties. In the case at hand, however, the court made no such order. Rather, the court simply set forth the circumstances in which its alimony order would be terminated or modified on the basis of the conduct of the parties. In our view, the orders we now review are more akin to the self-executing orders that have been determined to be appropriate on appellate review. We therefore conclude that the court did not improperly delegate to a nonjudicial officer its adjudicative responsibility.

B

Finally, the plaintiff argues that, even if the court's alimony order was not unlawful, it represented an abuse of discretion by the court because that order "precludes modification of alimony upward and as to increases in duration, while, at the same time, permits the defendant to seek modification of the award and to take unilateral action to terminate her alimony obligation without seeking court approval by way of modification."

We first set forth the applicable legal principles and

standard of review applicable to the plaintiff's argument that the court abused its discretion. In *Czarzasty* v. *Czarzasty*, supra, 101 Conn. App. 587, we repeated our oft stated maxim that "[a]n appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) "The generally accepted purpose of . . . alimony is to enable a spouse who is disadvantaged through divorce to enjoy a standard of living commensurate with the standard of living during marriage. . . . In addition to the marital standard of living, the trial court must also consider the factors in . . . § 46b-82 when awarding alimony." (Internal quotation marks omitted.) *Reinke* v. *Sing*, 186 Conn. App. 665, 689, 201 A.3d 404 (2018). Section 46b-82 (a) requires the court, when determining whether alimony should be awarded, to "consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment." See also *Reinke* v. *Sing*, supra, 689–90. "In addition to being awarded to provide an incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency, time limited alimony is also appropriately awarded to provide interim support until a future event occurs that makes such support less necessary or unnecessary." (Internal quotation marks omitted.) *O'Neill* v. *O'Neill*, 209 Conn. App. 165, 177, 268 A.3d 79 (2021).

In this regard, the court made several pertinent factual findings that find support in the record. The court recited the facts of the plaintiff's past employment, noting that, in 2000, he had earned more than $1 million dollars and, in 2001, he had earned more than $800,000. As to the plaintiff's claims regarding his lack of employment during the several years leading up to the marital dissolution, the court found "the plaintiff's position that he was too busy to secure employment to be without merit." The court further stated: "The defendant has solely earned the income for the family while the plaintiff was not working and refused to secure employment. . . . The plaintiff spent their money recklessly as the defendant tried to institute restraints. Controlling the plaintiff's buying sprees and spending habits was a constant struggle for the defendant that she was unable

to master. . . . These parties were not equal financial partners. She made the money (he made no real financial contribution after 2002), and he spent it faster than she could earn it.'' As an example of the plaintiff's spendthrift ways, the court noted that, at one point, the plaintiff had ''leased a Lamborghini, [a] Maserati, [an] Alfa Romeo, and a Porshe at the same time at an expense of over $8000 per month, all without the defendant's consent or knowledge.'' On the basis of expert opinion testimony, the court found that the plaintiff, at the time of trial, had a present earning capacity of $150,000 per year after approximately six months of ''gig assignments and selective placement by a professional placement service. . . . The plaintiff's financial rewards thereafter will match the personal effort advanced and that could be considerable over time.'' (Citations omitted.) The court found that the plaintiff was solely responsible for the breakdown of the parties' marriage due to ''his abusive and intimidating treatment of the defendant, by his excessive wasteful pattern of spending placing this family in financial distress, along with his failure to contribute financially to the household in-kind and in fact, in addition to his baseless jealously and suspicious nature of the defendant's fidelity.'' Finally, the court expressly stated that its alimony award was ''intended to provide the plaintiff with financial incentive to initiate a good faith job search and acquire employment commensurate with his earning capacity so that he may contribute toward his own expenses.''

Given this factual foundation, and mindful of the statutory factors and the purposes for alimony, it cannot be said that the court's alimony orders represent an abuse of its discretion. Instead, the memorandum of decision reflects that the court devised thoughtful and just alimony orders tailored to the parties' specific circumstances and abilities.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

[1] The record reveals that, during the course of the multiday, remote hearing on this action, the trial court, at the urging of both parties, ordered certain documents to be sealed, and, from time to time, the court closed the hearings on the basis that revealing certain information would be detrimental to one or more of the parties. In no instance did the trial court provide public notice of its intent to seal files or the courtroom as required by Practice Book § 25-59A (e). Subsequent to oral argument before this court, this court ordered the parties to file supplemental briefs on the question of whether this court should be bound by the trial court's sealing orders. Both parties, in their supplemental briefs, have urged this court to adhere to the sealing orders. The defendant argues that the trial occurred during the COVID-19 pandemic and that the trial court was not required to adhere to the dictates of Practice Book § 25-59A on the basis of the governor's order suspending rules of the court and the order of the Rules Committee of the Superior Court to similar effect, which were in place during the pandemic. The plaintiff urges this court to adhere to the sealing orders on the basis of

equity and the parties' reliance on the sealing orders in the manner in which the trial was conducted. This court, however, has an obligation to publicly issue its opinion for the public benefit and for the advancement of the law. Accordingly, in light of our authority pursuant to Practice Book § 77-2 (a) to alter a trial court's sealing orders, but in the spirit of the trial court orders and the parties' reliance on them, we do not, in this opinion, refer to either party or their children by name; nor does this opinion identify any of the parties' past or present employers.

[2] Because the trial took place during the COVID-19 pandemic, all hearings were conducted remotely.

[3] Among its property orders, the court ordered an equitable division of the defendant's Keogh plan valued at $1,762,000, her 401k plan valued at $1,540,700, and her partner defined benefit pension plan with an annual benefit of approximately $197,000, payable when the defendant reached the age of sixty-two years.

[4] There are parts of the plaintiff's principal appellate brief in which he appears to ask this court to reweigh the evidence introduced at trial, thereby implicitly challenging the court's factual findings. Nevertheless, the plaintiff subsequently clarified his claim by expressly stating in his reply brief and at oral argument before this court that he is not challenging any of the factual findings supporting the court's legal conclusion.

[5] The plaintiff also substantially relies on decisions from other jurisdictions as well as decisions of the Superior Court. We are not bound by these decisions and, regardless, do not find them persuasive. See *Mazza* v. *Mazza*, 216 Conn. App. 285, 306 n.13, 285 A.3d 90 (2022).

[6] Subsequent to *Bender*, our legislature amended § 46b-81. See Public Acts 2013, No. 13-213, § 2. That amendment has no bearing on the merits of this appeal; thus, for convenience, we refer to the current revision of the statute.

[7] During the trial, the plaintiff offered the testimony of Henry Guberman, a certified public accountant who specializes in forensic litigation services with an emphasis on matrimonial matters. He testified that he had analyzed the benefits that might be available to the defendant upon retirement but was unable to provide a present valuation of them without resorting to speculation as to the amount of the defendant's retirement pay. On cross-examination from the defendant's counsel, Guberman acknowledged that he could not characterize the defendant's potential retirement payments as an asset but, rather, indicated that he characterized them simply as a potential stream of payments. Ultimately, Guberman testified that he was not intending to offer an expert opinion as to valuation of the retirement provisions of the partnership agreement with any degree of professional certainty. On that basis, the court declined to qualify Guberman as an expert for purposes of offering any opinions because he stated that he had no opinions to offer.

[8] General Statutes § 46b-82 provides in relevant part: "(a) At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. . . . In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment."